# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | Case No. |
| v. | |
| STORM BRYANT, ELIJAH BRYANT III, CAPITALSTORM LLC, GENERATIONBLACK LLC, and NCOME LLC, | |
| Defendants. | |

## COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT

The Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through counsel, alleges as follows:

## I.     SUMMARY

1.      From at least March 2018 through the present (the "Relevant Period"), Storm Bryant and Elijah Bryant III ("Elijah Bryant"), individually and through CapitalStorm LLC ("Capital Storm"), generationblack LLC ("Generation Black"), and ncome LLC ("Ncome,") (collectively, the "Defendants"), have fraudulently solicited, and continue to fraudulently solicit, existing and prospective clients who are not eligible contract participants ("ECPs") to engage in retail transactions in off-exchange foreign currency ("forex") on a leveraged, margined, or financed basis.  Defendants have received at least $1.05 million from not less than ninety-four clients during the Relevant Period, all of which Defendants misappropriated.  Not less than

1

$50,870 was sent back to clients as purported forex trading "profits" in the nature of a "Ponzi" scheme.

2.     Defendants Capital Storm, Generation Black, and Ncome, without registering with the Commission as commodity trading advisors ("CTAs"), and Defendants Storm and Elijah Bryant, without registering as associated persons ("APs") of a CTA, respectively, solicited and continue to solicit clients or prospective clients through in-person solicitations as well as social media platforms such as Facebook and Instagram, including a website operated by Storm and Elijah Bryant, *www.capitalstorminvestments.com,* to induce non-ECP, retail clients to send Defendants funds. Storm and Elijah Bryant (collectively, the "Bryants"), both individually and as agents of Capital Storm, Generation Black, and/or Ncome, hold themselves out as highly successful forex traders who generate tremendous returns for their clients. When the Bryants successfully induced non-ECP, retail clients to send them funds, the Bryants misappropriated the funds by receiving them or moving them into accounts held by Storm and/or Elijah Bryant in their own names and using the funds to purchase jewelry, rent homes, travel to Europe, and fund the Bryants' personal trading accounts.

3.     Defendants, by and through the Bryants, made material misrepresentations in their solicitations including by misrepresenting that:  (a) clients' funds would be used to open trading accounts in their names and to trade forex on their behalf; (b) Defendants were successful and profitable traders who generated tremendous returns for their clients; (c) Defendants generated daily returns trading clients' forex accounts as high as 27.8% in a single day; and (d) Defendants were not required to be registered with the Commission to conduct their business operations.  All of these representations were false; there were no client trading accounts, Defendants were not

2

successful forex traders, no profits were generated for clients, and Defendants were each required to register with the Commission in their respective capacities.

4.     Defendants also omitted material facts in their solicitations, including but not limited to failing to disclose that: (a) Defendants never opened trading accounts in clients' names and any claimed client trading accounts were actually fictitious; b2) Defendants conducted no trading on behalf of clients; (c) the supposed trading accounts clients viewed online or on smartphones were demo accounts and not actual trading accounts; (d) Defendants misappropriated clients' funds for their own benefit; (e) the corporate Defendants Capital Storm, Generation Black, and Ncome have never been registered with the Commission as required by the Commodity Exchange Act ("CEA") and Commission Regulations ("Regulations"); (f) neither Storm nor Elijah Bryant have ever been registered with the Commission as required by the CEA and Regulations; and (g) purported "profits" or withdrawals of principal paid to some clients were in fact principal deposits of other clients (i.e., in the manner of a Ponzi scheme) and were not generated by profitable forex trading.

5.     At the Bryants' instruction, clients wired funds to bank accounts held in the names of Storm and/or Elijah Bryant. Upon information and belief, none of the at least $1.05 million received by Defendants from clients was used to trade forex on behalf of clients. Defendants did not open any U.S. forex trading accounts during the Relevant Period, and did not hold a power of attorney at any registered futures commission merchant ("FCM") or retail foreign exchange dealer ("RFED") to trade forex in a client's account. Upon information and belief, all forex accounts Defendants opened offshore were in the names of Storm Bryant or Elijah Bryant.

3

6.     Defendants misappropriated all of the funds obtained from clients and used them to support the Bryants' lavish lifestyle and to return approximately $50,870 to some clients as withdrawals of principal or as purported trading profits, in the nature of a "Ponzi" scheme.  The Bryants used clients' funds to pay for their own expenses, including but not limited to:  the rental of a $25,000 per month Beverly Hills, California residence; the purchase and lease of luxury jewelry including a gold Rolex watch; travel to Paris, France and Dead Sea resorts; and, cash withdrawals.  Despite their repeated demands to Defendants, the majority of clients were unable to obtain a return of any of their funds, or were falsely advised by Storm and/or Elijah Bryant that the client had lost all of their funds through purported "trading losses."

7.     Through this conduct, and other conduct alleged below:  (a) Defendants have violated and are violating 7 U.S.C. § 6b(a)(2)(A)-(C) (2018), and 17 C.F.R. § 5.2(b)(1), (3) (2020), by engaging in fraud in connection with off-exchange, retail forex transactions; and (b) Capital Storm, Generation Black, and/or Ncome have violated and are violating 7 U.S.C. § 6o(1)(A), (B) (2018), by engaging in fraud while acting as commodity trading advisors and violating 17 C.F.R. § 4.30(a) (2020), by soliciting, accepting, and receiving in their own name funds from existing and prospective clients purportedly for purposes of trading forex.

8.     In addition, during the Relevant Period, Capital Storm, Generation Black, and Ncome, without being registered with the CFTC, acted and continue to act as CTAs by, in exchange for compensation, exercising discretionary trading authority or obtaining written authorization to exercise discretionary trading authority over accounts for or on behalf of others who were not ECPs in connection with retail forex transactions.  As a result, Capital Storm, Generation Black, and Ncome violated and are violating 7 U.S.C.

4

§§ 2(C)(2)(C)(iii)(I)(aa), 6m(1) (2018), and 17 C.F.R. § 5.3(a)(3)(i) (2020) by failing to register with the CFTC as CTAs.

9.      Similarly, during the Relevant Period, Storm and Elijah Bryant, without being registered with the CFTC, were and are acting as APs of CTAs Capital Storm, Generation Black, and/or Ncome by soliciting existing or prospective clients to open forex trading accounts while acting as partners, officers, employees, consultants and/or agents of Capital Storm, Generation Black, and/or Ncome.  As a result, Storm and Elijah Bryant violated 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa) and 6k(3) (2018), and 17 C.F.R. § 5.3(a)(3)(ii) (2020).

10.      Finally, Capital Storm, Generation Black, and Ncome violated 17 C.F.R. § 4.33 (2020) by failing to keep required books and records.

11.      Throughout the Relevant Period, Storm and Elijah Bryant committed the acts, omissions, and/or failures alleged in this Complaint either while acting for themselves and/or while acting within the scope of their employment, agencies, and/or offices with Capital Storm, Generation Black, and/or Ncome.  Capital Storm, Generation Black, and/or Ncome are therefore liable for those acts, omissions, and/or failures of Storm and Elijah Bryant undertaken in their respective capacities pursuant to 7 U.S.C. § 2(a)(1)(B) (2018) and 17 C.F.R. § 1.2 (2020).

12.      Throughout the Relevant Period, Storm and Elijah Bryant directly or indirectly controlled Capital Storm, Generation Black, and/or Ncome.  In their capacities as controlling persons of Capital Storm, Generation Black, and/or Ncome, Storm and Elijah Bryant did not act in good faith or willfully, knowingly, or recklessly induced, directly or indirectly, the acts, omissions, and/or failures of Capital Storm, Generation Black, and/or Ncome that violated 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), (bb), 6b(a)(2)(A)-(C), 6m(1), and 6o(1)(A), (B) (2018), and 17 C.F.R. §§ 4.30(a), 5.2(b)(1), (3), 5.3(a)(3)(i) (2020).  Storm and Elijah Bryant are therefore

5

liable for Capital Storm, Generation Black, and/or Ncome's acts, omissions, and/or failures under 7 U.S.C. § 13c(b) (2018).

13.    Accordingly, pursuant to 7 U.S.C. §§ 2(c)(2)(C) and 13a−1 (2018), the CFTC brings this action to enjoin Defendants' unlawful acts and practices, and to compel their compliance with the CEA and Regulations.

14.    In addition, the CFTC seeks civil monetary penalties for Defendants' violations of the CEA and Regulations, and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

15.    Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in this Complaint.

## II.    JURISDICTION AND VENUE

16.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction), 28 U.S.C. § 1345 (2018) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by act of Congress).  In addition, 7 U.S.C. § 13a–1(a) (2018) provides that U.S. district courts possess jurisdiction to hear actions brought by the CFTC for injunctive relief or to enforce compliance with the Act whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

17.    Venue properly lies with the Court pursuant to 7 U.S.C. § 13a−1(e) (2018) because Defendants are found in, inhabit, and transact business in this District, and certain

transactions, acts, practices, and courses of business alleged in this Complaint occurred and are occurring within this District.

## III.     THE PARTIES

18.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the CEA and Regulations.  The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

19.     Defendant **Storm Bryant** has a last known address in Los Angeles, California, where she resides or resided with her husband, Elijah Bryant.  Throughout the Relevant Period, Storm Bryant was an agent and/or officer of Capital Storm, Generation Black, and/or Ncome, and also held herself out as a trader and portfolio manager at Capital Storm.  She has never been registered with the Commission in any capacity.

20.     Defendant **Elijah Bryant III** has a last known address in Los Angeles, California, where he resides or resided with his wife, Storm Bryant.  Throughout the Relevant Period, Elijah Bryant was an agent and/or officer of Capital Storm, Generation Black, and/or Ncome.  He has never been registered with the Commission in any capacity.

21.     Defendant **CapitalStorm LLC** is a limited liability company organized pursuant to the laws of the State of North Carolina on or about August 30, 2019 and was subsequently administratively dissolved.  Storm Bryant appears to be Capital Storm's managing member. Capital Storm purportedly maintains a principal office at 4501 New Bern Avenue, Suite #152, Raleigh, North Carolina 27610; however, this address is in fact the address of a UPS Store that offers mailboxes and mail forwarding services.  Capital Storm also purportedly maintains a mailing address of 6135 Park South Drive Suite 510, Charlotte, North Carolina 28210; however,

7

this address is actually the address of a Davinci Virtual Office building, which offers, among other things, a mail forwarding service. Capital Storm has never been registered with the Commission in any capacity.

22. Defendant **generationblack LLC** was a limited liability company organized pursuant to the laws of North Carolina on or about June 29, 2018. It was administratively dissolved on February 4, 2020. Elijah Bryant is Generation Black's managing member. Generation Black purportedly maintained an office at 401 Hawthorne Lane Suite 110 #165, Charlotte, North Carolina 28204; however, this address is in fact the address of a UPS Store that offers mailboxes and mail forwarding services. Generation Black has never been registered with the Commission in any capacity.

23. Defendant **ncome LLC** is a limited liability company organized pursuant to the laws of North Carolina on or about January 22, 2019 and was subsequently administratively dissolved. Elijah Bryant is Ncome's managing member. Ncome purportedly maintains a principal office at 4501 New Bern Avenue, Suite #152, Raleigh, North Carolina 27610; however, this address is in fact the address of a UPS Store that offers mailboxes and mail forwarding services. Ncome has never been registered with the Commission in any capacity.

## IV.    STATUTORY BACKGROUND AND REGISTRATION REQUIREMENTS

24. 7 U.S.C. § 2(c)(2)(C) (2018), applies provisions of the CEA to agreements, contracts, or transactions in forex. Specifically, 7 U.S.C. § 2(c)(2)(C)(iv) (2018) states that 7 U.S.C. § 6b (2018), applies to forex agreements, contracts, or transactions "as if" they were contracts of sale of a commodity for future delivery.

25. 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) prohibits any person from exercising discretionary trading authority or obtaining written authorization to exercise written  trading

8

authority over any account for or on behalf of any non-ECP, unless registered with the Commission, with certain exceptions not applicable to Defendants. In addition, 7 U.S.C. § 6m(1) (2018) and 17 C.F.R. § 5.3(a)(3)(i) (2020) require any person acting as a CTA, as defined in 17 C.F.R. § 5.1(e)(1) (2020), to be registered as such with the Commission.

26. 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2018) prohibits any person from soliciting or accepting orders from any person that is not an ECP, unless registered with the Commission, with certain exceptions not applicable to Defendants. In addition, 7 U.S.C. § 6k(3) (2018) and 17 C.F.R. § 5.3(a)(3)(ii) (2020) require any person acting as an AP of a CTA, as defined in 17 C.F.R. § 5.1(e)(2) (2020), to be registered as such.

27. For the purposes of trading forex, a CTA is defined in 17 C.F.R. § 5.1(e)(1) (2020) as "any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an eligible contract participant . . . in connection with retail forex transactions."

28. For the purposes of trading forex, an AP of a CTA is defined in 17 C.F.R. § 5.1(e)(2) (2020) as "any natural person associated with a commodity trading advisor . . . as a partner, officer, employee, consultant or agent . . . in any capacity which involves: (i) The solicitation of a client's or prospective client's discretionary account; or (ii) The supervision of any person or persons so engaged."

29. An ECP is defined by the CEA, in relevant part, as "an individual who has amounts invested on a discretionary basis, the aggregate of which is in excess of—(I) $10,000,000; or (II) $5,000,000 and who enters into the agreement, contract, or transaction in

order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." 7 U.S.C. § 1a(18)(xi) (2018).

30.     In addition, 7 U.S.C. § 6m(1) (2018) and 17 C.F.R. § 5.3(a)(3)(i) (2020) require any person acting as a CTA, as defined in 7 U.S.C. § 1a(12) (2018) and 17 C.F.R. § 5.1(e)(1) (2020), to be registered as such with the Commission.  Similarly, 7 U.S.C. § 6k(3) (2018) and 17 C.F.R. § 5.3(a)(3)(ii) (2020) require any person acting as an AP of a CTA, as defined in 17 C.F.R. § 5.1(e)(2) (2020), to be registered as such.

31.     Pursuant to 17 C.F.R. § 4.33(a) (2020) all CTAs are required to keep certain books and records, including without limitation, the name and address of each client, all powers of attorney authorizing the CTA to trade on behalf of clients, a record of all transactions in client accounts traded on behalf of clients, and a record of all such accounts.

32.     Pursuant to 17 C.F.R. § 4.33(b) all CTAs are required to keep certain books and records, including without limitation, a daily record of all transactions of the CTA.

33.     Pursuant to 7 U.S.C. § 2(c)(2)(C)(ii)(I) (2018), agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(ii)(I) (2018), and accounts or pooled investment vehicles described in clause (vii), shall be subject to subsection (a)(1)(B) of that section and sections 6(b), 6b, 6c(b), 6o, 9, and 13b of Title 7 of the United States Code (except to the extent that sections 9 and 13b of this title prohibit manipulation of the market price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any market), 13a-1, 13a-2, 12(a), 13c(a), and 13c(b) of Title 7 of the United States Code.

34.     Pursuant to 17 C.F.R. § 5.4 (2020), Part 4 of the Commission's Regulations applies to any person required pursuant to the provisions of Part 5 of the Commissions Regulations to register as a commodity pool operator or as a CTA.  Failure by any such person to

10

comply with the requirements of Part 4 of the Commission's Regulations will constitute a violation of 17 C.F.R. § 5.4 and the relevant section of Part 4 of the Commission's Regulations.

## V. FACTS

### A. Defendants' Fraudulent Scheme

35. Throughout the Relevant Period, Defendants, by and through the Bryants, used and continue to use in-person solicitations and social media platforms, including Facebook and Instagram, along with other methods of communication, including other means and instrumentalities of interstate commerce, to hold out Capital Storm, Generation Black, and/or Ncome as CTAs for the purpose of soliciting members of the public, including individuals who are not ECPs, to allow Defendants to trade forex on their behalves. In their solicitations, the Bryants, both individually and as the agents of Capital Storm, Generation Black, and/or Ncome, falsely claimed to trade forex on behalf of clients, falsely claimed to generate profits trading forex behalf of clients, and falsely touted their experience and history of "profitable" forex trading. The Bryants concurrently failed to advise existing and prospective clients that Defendants were misappropriating all client funds, that no client trading accounts exist or existed, that no trading on behalf of clients ever took place, and that Defendants were engaged in an illegal business enterprise as none of the Defendants were registered with the CFTC as required by federal law.

36. During the Relevant Period, Storm Bryant, individually and as an agent of Capital Storm, Generation Black, and/or Ncome, made materially false and/or misleading representations to existing and prospective clients on Facebook and Instagram, and through other media, in which she both purported to have generated substantial forex trading profits for clients and offered to trade on behalf of prospective clients. In these statements, and in photographs that accompanied them, the Bryants purported to trade forex on a margined, leveraged, or financed

11

basis on behalf of individuals whom are not ECPs.  Many of these social media solicitations displayed photographs of the Bryants vacationing in Paris, France and the Dead Sea, buying a gold Rolex watch for Elijah Bryant, and driving high-end automobiles as a purported demonstration of their trading prowess.

37.     For example, on February 8, 2019, Storm Bryant posted on Facebook:

> ANOTHER investor account
> If you have a larger amount of money that you'd like grown & traded for you... I'm taking investor account applications for the next 2 months $25K is the minimal! Contact me

38.     In a May 9, 2019 Facebook post, Storm Bryant wrote:  "Well I just started this $23K account for a new investor.........  27.8% return on the 1st day of trading!!!!  ($6400) PROFIT.  Always aiming to give the BEST to my investors. . . ."

39.     In a related May 15, 2019 Facebook post, Storm Bryant wrote:

> ***INVESTOR ACCOUNT UPDATE***
> I've been traveling so I missed posting yesterday, and the day before.
> $21K PROFIT in 5 days total trading.
> Think I'll have this account to $100K before the end of the month
> I'm enjoying letting you guys watch my work. Scroll back a few posts to see how fast I've done this
> #Scalpscalpscalp

40.     On June 27, 2019, Storm Bryant posted on Facebook:  "Another $1000-2K day on all my investor accounts.  Always the best entry's [*sic*].  Contact me for management."

41.     A few days later, in a July 1, 2019 Facebook post, Storm Bryant wrote:

HAPPY MONDAY Forex family  Just updates on my entries from my IG posts. Follow me ( @Stormbijan ) lol!  $1K+ profits are normal on every single account I'm trading on.  I've been receiving many inquiries... If you're interested in an investment account with me, time and slots are now limited. I'll no longer be accepting past August.  $25K minimal for private accounts.  $10K minimal for pool.  Having someone grow your money can change everything.

42.     On January 3, 2020, Storm Bryant posted to Facebook:

Still have been trading while on vacay:)
$55K on this private investors account; we started with so little.
I have tons of accounts like this.
Throwing out % deals for NEW private accounts with #CapitalStorm this month.
$25K minimum to work with me!!
#CapStorm . . . .

43.    All of these solicitations to existing and prospective clients were false.  There were no accounts carried in the name of clients, and Defendants did not affect any trades in client accounts on behalf of clients.  Defendants never generated any "profits" on behalf of clients because Defendants never traded on behalf of clients.  At no time during the Relevant Period did any of the Defendants possess a power of attorney to trade a forex account carried in the name of a client at an FCM registered with the CFTC.  Upon information and belief, none of the actual or prospective clients solicited by Storm and/or Elijah Bryant were ECPs.

44.    Storm Bryant, both individually and as an agent of Capital Storm, Generation Black, and/or Ncome, failed to disclose material facts to existing and prospective clients, including without limitation:  (a) that Defendants were misappropriating all client funds they received; (b) that no trading took place on behalf of clients; (c) that Capital Storm, Generation Black, and/or Ncome have never been registered to act as CTAs, and that neither Storm nor Elijah Bryant have ever been registered to act as APs of CTAs; (d) that Defendants have been and are engaging in an unlawful business enterprise without such registrations; (e) that neither she nor Capital Storm nor Generation Black nor Ncome held a power of attorney to trade any client accounts; (f) that any purported trading accounts in the name of clients were fictitious; (g) that Storm and Elijah Bryant spent misappropriated client funds to support their lavish lifestyles; and (h) that any forex trades she purportedly executed, individually or on behalf of Capital Storm, Generation Black, and/or Ncome were not executed on behalf of clients but for her own benefit.

13

45.     Storm Bryant, individually and as an agent of Capital Storm, Generation Black, and/or Ncome, also made material misrepresentations and omissions directly to existing or prospective clients through solicitations by telephone, email, text, and other methods.

46.     On or about March 6, 2019, a prospective client asked Storm Bryant whether she was licensed to trade for others.  In response, Storm Bryant texted the prospective client, among other things, that she was legally able to trade for anyone.  This representation was false.  In fact, neither Storm Bryant nor any of the other Defendants have ever been registered with the Commission to trade forex or any other commodity interests on behalf of others, or in any other capacity.  Moreover, Defendants were not otherwise eligible for any exceptions or exclusions from registration.

47.     In other communications with other existing or prospective clients, Storm Bryant failed to disclose that she has never been registered with the Commission in any capacity.

48.     In a recorded telephone call with a prospective client, the prospective client asked Storm Bryant about provisions in the Capital Storm Account Agreement stating that the client's account would be held in Storm Bryant's name.

49.     In response, Storm Bryant falsely likened Capital Storm to Edward Jones & Co., a financial services company registered as a brokerage firm and an investment advisor with the Financial Industry Regulatory Authority (commonly referred to as "FINRA"), stating:

> Just like Edward Jones, you know, I'm a fund.  So basically, you know, if you open up an account with Capital Storm, what you're technically doing is making an investment in my fund and you're allowing me to…to…to make the decision with what happens in trading currencies.  So that's how a fund operates for forex.  So forex hedge fund, basically, I take on investors and those investors write checks to me but the accounts are actually opened in my name and you guys have investment passcodes.  So you're able to watch all the trades, you're able to actually see, you know, me trade every day.  But the actual payout comes from my company.  So, you know, you guys have your account, you see it growing,

14

you build a portfolio with me, but you actually have to withdraw through me, not the actual broker account.

These representations were all false.

50.     Storm Bryant's representations contained statements of material fact that were false and/or misleading, and omitted material facts that were necessary to make certain statements not false or misleading.  Unlike Edward Jones & Co., Capital Storm and Storm Bryant are unregistered and cannot legally engage in a business that trades forex on behalf of retail clients for compensation.

51.     Storm Bryant failed to disclose that persons who trade forex on behalf of retail clients for compensation cannot legally accept funds from them; all such funds must be deposited directly into an account carried in the name of the client for which the CTA holds a power of attorney to trade behalf of the client.  Moreover, by comparing Capital Storm with Edward Jones & Co., Storm Bryant downplayed the risks associated with trading off-exchange forex on a leveraged, margined, or financed basis through Capital Storm, Generation Black, and/or Ncome by attempting to create a veneer of legitimacy to Defendants' unlawful business enterprise.

52.     For some of Defendants' clients, Storm Bryant claimed that the clients purportedly lost all or substantially all of the client's funds through trading forex.  These representations were false:  at no time during the Relevant Period did Defendants engage in forex trading on behalf of clients; therefore, no forex trading losses could occur.  Instead, client funds were misappropriated by Defendants and used to support Defendants' lavish lifestyle.  A small portion of the funds Defendants misappropriated were used to pay some clients purported "profits."

53.     Despite purporting to lose all or substantially all the funds provided by not less than thirteen clients, Storm Bryant continued to tout her forex trading ability on Facebook and

15

Instagram, and in other forms of communication, by, among other things, posting statements about highly profitable trades that she purportedly had executed. Viewed in their proper context, these statements were false or materially misleading in that they portrayed Storm Bryant's trading abilities in a manner that conflicted with her past results.

54.     Throughout the Relevant Period, Elijah Bryant, acting individually and as an agent of Capital Storm, Generation Black, and/or Ncome, solicited existing and prospective clients on Facebook and Instagram by falsely claiming to have generated substantial profits for clients by trading forex on their behalves.

55.     For example, in an August 14, 2019 Facebook post, Elijah Bryant falsely represented to existing and prospective clients: "Doubled this account in TWO weeks.... DOUBLED..... from 9k to 18k.... start your account with as little as $100 and let me get to work trading for you ZERO losses. MarathonForex.com." These representations were false.

56.     And on December 2, 2019, Elijah Bryant posted the following representations to existing and prospective clients on Facebook:

> Now let me just say this.... SO many of my investors doubted me during these trades... I ask that you please remember why it is you hired me to trade your accounts.... I will always make the choices I feel best for us all... I deserve your trust. All I am is transparent. My intentions are always good. I win 95-97% of the time since June..... if you stick with me; you WILL come up. You just have to stay down.

57.     These representations were false. Elijah Bryant did not possess a power of attorney from any client to trade his or her account during the Relevant Period. At no time during the Relevant Period did Elijah Bryant trade any client's account on his or her behalf. At no time during the Relevant Period did Elijah Bryant "win" trading on behalf of any client or "double" a client's money.

58.    These statements, and others like it, were false and contained omissions of material fact.  Elijah Bryant, individually and as an agent of Capital Storm, Generation Black, and/or Ncome, failed to disclose to existing and prospective clients, including without limitation: (a) that he never traded a client's account; (b) that he misappropriated client funds; (c) that he never earned any profits on behalf of a client; (d) that he is not registered to act as a CTA or an AP of a CTA as required, and therefore can neither legally trade on clients' behalves for compensation nor solicit clients for purposes of trading forex on their behalves in exchange for compensation; (e) that neither he nor Capital Storm nor Generation Black nor Ncome held a power of attorney to trade client accounts; and (f) that any forex trades he executed, individually or on behalf of Capital Storm, Generation Black and/or Ncome, were not executed on behalf of clients but were made in accounts carried in the name of and for the benefit of Elijah Bryant.

59.    For at least some of his clients, Elijah Bryant, individually and as an agent of Capital Storm, Generation Black and/or Ncome, advised them that he lost all or substantially all their funds trading forex.  These representations were false—no trading on behalf of clients took place during the Relevant Period.  While advising some clients they had purportedly lost all or substantially all of their funds, Elijah Bryant simultaneously touted his forex trading ability on Facebook and Instagram, and in other forms of communication, by, among other things, posting statements about highly profitable trades that he purportedly had executed.  These representations were false.

60.    In communications with other existing or prospective clients, Elijah Bryant failed to disclose that he has never been registered with the Commission in any capacity.

## B. Defendants Fraudulently Accepted Clients' Funds

61.    As a result of the solicitations described above, not less than ninety-four clients sent at least $1.05 million to Defendants, which the Bryants, individually and as agents of Capital Storm, Generation Black and/or Ncome, accepted and/or received in their name in bank accounts they held either solely and/or jointly with one another or others for the purpose of trading retail forex accounts on behalf of non-ECP clients.

62.    For example, on June 13, 2019, a client entered into an agreement with Capital Storm, signed by Storm Bryant, in which Capital Storm agreed to exercise discretionary trading authority over the non-ECP client's purported retail forex account using $25,000 provided by the client in exchange for certain fees. Pursuant to that agreement, the client was instructed to send the $25,000 to a bank account that Storm Bryant held in her own name, as the agent of Capital Storm. As instructed, on June 13 and 14, 2019, the client sent a total of $25,000 to a bank account held personally by Storm Bryant as the agent of the corporate Defendants. Once deposited into Storm Bryant's personal bank account, the client's funds were commingled with funds already in the account and misappropriated by the Defendants

## C. Defendants Misappropriated Client Funds They Received

63.    While Storm and Elijah Bryant, individually and/or as agents of Capital Storm, Generation Black, and/or Ncome, represented to clients that their funds would be used to trade forex on their behalves, in fact, none of the at least $1.05 million Defendants solicited and accepted from clients was used to trade forex on behalf of clients. A number of clients entered into written agreements with Capital Storm, Generation Black, and/or Ncome wherein the Bryants, acting as agents of Capital Storm, Generation Black, and Ncome, agreed to trade forex accounts on behalf of the clients.

18

64.     Rather than trade the funds in clients' forex trading accounts pursuant to a valid power of attorney, Defendants misappropriated those funds when they were received and accepted in personal bank accounts held in Storm and/or Elijah Bryant's names and commingled with other sources.  The Bryants misappropriated funds for unauthorized purposes to support their lavish lifestyle, including but not limited to:  trips to Paris and the Dead Sea; a gold Rolex watch, and the rental of a $25,000 per month mansion in Beverly Hills, California.  Some client funds were used by the Bryants to fund their personal trading accounts in Belize and elsewhere.

65.     Defendants also misappropriated clients' funds to pay approximately $50,870 to certain clients who requested withdrawals from their accounts as either withdrawals of principal or as purported trading "profits" in the form of a "Ponzi" scheme.  Defendants did not disclose the nature of these payments to clients or prospective clients.

**D.     Defendants Acted as Unregistered Commodity Trading Advisors and/or Associated Persons of Commodity Trading Advisors**

66.     As set forth above, during the Relevant Period, Capital Storm, Generation Black, and Ncome acted in capacities requiring registration as CTAs by exercising discretionary trading authority or obtaining written authorization to exercise discretionary trading authority, over retail forex account(s) for or on behalf of non-ECPs, in connection with retail forex transactions.  A number of clients entered into written agreements with Capital Storm, Generation Black, and/or Ncome wherein the Bryants, acting as agents of Capital Storm, Generation Black, and Ncome, obtained written authorization to trade forex accounts on behalf of the clients.

67.     At all times during the Relevant Period, Capital Storm, Generation Black, and Ncome acted as CTAs while not registered as such with the CFTC.

19

68.     As set forth above, at all times during the Relevant Period, Elijah and Storm Bryant acted as APs of a CTA by being associated with a CTA or CTAs as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in capacities that involved the solicitation of funds.  Both Storm and Elijah Bryant solicited funds from clients throughout the Relevant Period for the purpose of retail forex trading.

69.     At no time during the Relevant Period were Storm or Elijah Bryant registered with the CFTC as APs of a CTA, or in any other capacity.

**E.     Defendants Mishandled Client Funds and Failed to Keep Required Books and Records**

70.     As alleged above, Defendants accepted and received in Defendants' names funds from existing and prospective clients for purposes of trading forex on behalf of said clients, in exchange for compensation.

71.     Defendants also failed to keep certain books and records required by the CEA and Regulations.  Prior to filing this complaint, the CFTC issued administrative subpoenas to Capital Storm, Generation Black, and Ncome requiring the production of certain documents and records. Among other things, those subpoenas required client lists, trading records, and other records related to their business operations.  In response to those subpoenas, Capital Storm, Generation Black, and Ncome provided some records, but failed to:  (a) produce a list of any clients with addresses; (b) failed to produce any records relating to any accounts for which they possessed a valid power of attorney authorizing them to trade forex accounts held in clients' names at a futures commission merchant ("FCM") registered with the CFTC; (c) failed to produce any daily transaction records relating to any account for which they held a valid power of attorney

authorizing them to trade on behalf of clients; and (d) failed to produce any Disclosure Documents relating to any account for which they traded on behalf of any client.

72. At all times during the Relevant Period, Storm and Elijah Bryant acted in both their individual capacity and as agents of Capital Storm, Generation Black, and/or Ncome.

## VI. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I
**Fraud in Connection with Commodity Futures Contracts**
Violations of 7 U.S.C. § 6b(a)(2)(A)-(C) (2018) and 17 C.F.R. § 5.2(b)(1), (3) (2020)

73. The allegations in the above paragraphs are realleged and incorporated herein by reference.

74. Pursuant to 7 U.S.C. § 6b(a)(2)(A)-(C), it is unlawful:

[F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery . . . that is made, or to be made, for or on behalf of, or with, any other person other than on or subject to the rules of a designated contract market—(A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement . . . [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

75. Pursuant 17 C.F.R. § 5.2(b) it is unlawful:

[F]or any person, by use of the mails, or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:  (1) to cheat or defraud or attempt to cheat or defraud any person; . . . or (3) willfully to deceive or attempt to deceive any person by any means whatsoever.

76. As described herein, Defendants violated and continue to violate 7 U.S.C. § 6b(a)(2)(A)-(C) (2018)  and 17 C.F.R. § 5.2(b)(1), (3) (2020) by cheating or defrauding, or attempting to cheat or defraud, other persons, and willfully deceiving or attempting to deceive other persons in connection with the offering of, or entering into, the off-exchange leveraged

21

or margined forex transactions alleged herein, by, among other things: (a) fraudulently soliciting clients and prospective clients by making material misrepresentations and omissions about Defendants' trading abilities and profits, and Defendants' use of deposited funds; and (b) misappropriating pool participants' funds, all in violation of 7 U.S.C. § 6b(a)(2)(A)-(C) (2018) and 17 C.F.R. § 5.2(b)(1), (3) (2020).

77.     Defendants engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to: interstate wires for transfer of funds, email, websites, and other electronic communication devices.

78.     Storm and Elijah Bryant, acting both individually and as agent and officer of Capital Storm, Generation Black, and Ncome, engaged in the acts and practices described above knowingly, willfully, or with reckless disregard for the truth.

79.     Storm and Elijah Bryant controlled Capital Storm, Generation Black, and Ncome, directly or indirectly, and did not act in good faith and knowingly induced, directly or indirectly, Capital Storm, Generation Black, and Ncome to commit the acts and/or omissions alleged herein. Therefore, pursuant to 7 U.S.C. § 13c(b) (2018), Storm and Elijah Bryant are liable for Capital Storm, Generation Black, and Ncome's violations of 7 U.S.C. § 6b(a)(2)(A)-(C) (2018) and 17 C.F.R. § 5.2(b)(1), (3) (2020).

80.     At all times during the Relevant Period, Storm and Elijah Bryant acted within the course and scope of their respective employment, agency, or office with Capital Storm, Generation Black, and Ncome. Pursuant to 7 U.S.C. § 2(a)(1)(B) (2018), Capital Storm, Generation Black, and Ncome are liable as principals for Storm and Elijah's respective violations of 7 U.S.C. § 6b(a)(2)(A)-(C) (2018) and 17 C.F.R. § 5.2(b)(1), (3) (2020).

81. Each act of fraudulent solicitation and misappropriation, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)-(C) (2018) and 17 C.F.R. § 5.2(b)(1), (3) (2020).

## COUNT II
### Failure to Register as Commodity Trading Advisors
Violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I) (bb), 6m(1) (2018), and
17 C.F.R. § 5.3(a)(3)(i) (2020)

82. The allegations in the above paragraphs are realleged and incorporated herein by reference.

83. 7 U.S.C. § 6m(1) provides that "[i]t shall be unlawful for any commodity trading advisor . . . , unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such commodity trading advisor. . . ."

84. Through the conduct alleged above, Capital Storm, Generation Black, and Ncome have violated and are violating 7 U.S.C. § 2(c)(2)(C)(iii)(I) (bb) by exercising discretionary trading authority and by obtaining written authorization to exercise discretionary trading authority over forex trading accounts on behalf of people who are not ECPs, and by doing so both in exchange for compensation and without CFTC registration.

85. Through the conduct alleged above, Capital Storm, Generation Black, and Ncome have violated and are violating 7 U.S.C. § 6m(1) by using the mails and other means or instrumentalities of interstate commerce to engage in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in forex, and doing so for compensation or profit and without CFTC registration.

23

86. Through the conduct alleged above, Capital Storm, Generation Black, and Ncome have violated and are violating 17 C.F.R. § 5.3(a)(3)(i) by acting as unregistered CTAs for purposes of retail forex agreements, contracts, and transactions.

87. Storm and/or Elijah Bryant directly or indirectly controlled Capital Storm, Generation Black, and/or Ncome and did not act in good faith or knowingly, or with reckless disregard for the truth, induced, directly or indirectly, the acts constituting their violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(bb), 6m(1), and 17 C.F.R. § 5.3(a)(3)(i). Storm and/or Elijah Bryant are/is therefore liable for these violations of Capital Storm, Generation Black, and/or Ncome pursuant to 7 U.S.C. § 13c(b).

88. Each instance during the Relevant Period in which Defendants acted as unregistered CTAs, including, but not limited to, those specifically alleged herein, and each day on which such unregistered conduct took place, is alleged as a separate and distinct violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(bb), 6m(1), and 17 C.F.R. § 5.3(a)(3)(i).

## <u>COUNT III</u>
**Failure to Register as an Associated Person of a Commodity Trading Advisor**
Violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), 6k(3) (2018), and
17 C.F.R. § 5.3(a)(3)(ii) (2020)

89. The allegations in the above paragraphs are realleged and incorporated herein by reference.

90. 7 U.S.C. § 6k(3) provides that:

It shall be unlawful for any person to be associated with a commodity trading advisor as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of a client's or prospective client's discretionary account or (ii) the supervision of any person or persons so engaged, unless such person is registered with the Commission under this chapter as an associated person of such commodity trading advisor and such registration shall not have expired, been suspended (and the period of suspension has not expired), or been revoked.

91. 7 U.S.C. §6k(3) further provides that:

It shall be unlawful for a commodity trading advisor to permit such a person to become or remain associated with the commodity trading advisor in any such capacity if the commodity trading advisor knew or should have known that such person was not so registered or that such registration had expired, been suspended (and the period of suspension has not expired), or been revoked.

92. During the Relevant Period, Storm and Elijah Bryant acted and continue to act as APs of CTAs, as defined in 17 C.F.R. § 5.1(e)(2) (2020), because each is a natural person associated with CTAs, as defined in 17 C.F.R. § 5.1(e)(1) (2020), as a partner, officer, employee, consultant, or agent, in a capacity that involved and continues to involve: (a) the solicitation of a client's or prospective client's discretionary account; or (b) the supervision of any person or persons so engaged. Storm and Elijah Bryant are violating 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) by soliciting or accepting orders in connection with forex trading accounts from non-ECPS. Storm and Elijah Bryant engaged and continue to engage in this conduct without being registered with the Commission as APs of CTAs Capital Storm, Generation Black, and Ncome in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa) and 6k(3), and 17 C.F.R. § 5.3(a)(3)(ii).

93. During the Relevant Period, Storm and Elijah Bryant were acting as the officers, employees, and/or agents of Capital Storm, Generation Black, and/or Ncome. Therefore, pursuant to 7 U.S.C. § 2(a)(1)(B) (2018) and 17 C.F.R. § 1.2 (2020), Capital Storm, Generation Black, and/or Ncome are liable for Storm and Elijah Bryants' violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa) and 6k(3), and 17 C.F.R. § 5.3(a)(3)(ii).

94. Each instance in which Storm and Elijah Bryant engaged in this conduct and failed to register with the CFTC as APs of Capital Storm, Generation Black, and/or Ncome is a separate and distinct violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa) and 6k(3), and 17 C.F.R. § 5.3(a)(3)(ii).

95. During the Relevant Period, Capital Storm, Generation Black, and/or Ncome violated 7 U.S.C. § 6k(3) by permitting Storm and Elijah Bryant, as unregistered APs, to become or remain associated with Capital Storm, Generation Black, and/or Ncome in capacities that Capital Storm, Generation Black, and/or Ncome knew or should have known that Storm and Elijah Bryant were not registered with the CFTC to act as APs of CTAs.

96. Each instance in which Capital Storm, Generation Black, and/or Ncome engaged in this conduct and is a separate and distinct violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa) and 6k(3), and 17 C.F.R. § 5.3(a)(3)(ii).

### COUNT IV
**Fraud by a Commodity Trading Advisor**
Violations of 7 U.S.C. § 6*o*(1)(A)-(B) (2018)

97. The allegations set forth in the above paragraphs are re-alleged and incorporated herein by reference.

98. Pursuant to 7 U.S.C. § 6*o*(1), it is unlawful for a CTA, by use of the mails or any other means or instrumentality of interstate commerce, directly or indirectly to: (A) employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

99. As alleged herein, throughout the Relevant Period, while operating as commodity trading advisors, Capital Storm, Generation Black, and Ncome used the internet, interstate wires, and other means or instrumentality of interstate commerce, directly or indirectly, to employ a device, scheme, or artifice to defraud existing and prospective clients, at least one of whom was not an ECP, and to engage in transactions, practices, or a course of business that operated and is operating as a fraud or deceit upon existing and prospective clients and by: (a) misappropriating

26

client funds; (b) fraudulently soliciting funds from existing and prospective clients for purposes of trading forex in exchange for compensation; (c) making material misrepresentations and omissions related to their registration status and ability to trade forex legally on behalf of retail clients, and their trading abilities and trading results.

100. By and through this conduct, Capital Storm, Generation Black, and Ncome violated 7 U.S.C. § 6*o*(1)(A)-(B).

101. Storm and Elijah Bryant, individually and on behalf of Capital Storm, Generation Black, and/or Ncome, engaged in the acts and practices described above willfully, knowingly, or with reckless disregard for the truth.

102. During the Relevant Period, Storm and Elijah Bryant acted as officers, employees, and/or agents of Capital Storm, Generation Black, and/or Ncome. Therefore, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2, Capital Storm, Generation Black, and Ncome are liable for Storm and Elijah Bryant's violations of 7 U.S.C. § 6*o*(1)(A)-(B).

103. During the Relevant Period, Storm and Elijah Bryant directly or indirectly controlled Capital Storm, Generation Black, and/or Ncome and did not act in good faith or knowingly, or with reckless disregard for the truth, induced, directly or indirectly, the acts constituting their violations of 7 U.S.C. § 6*o*(1)(A)-(B). Storm and Elijah Bryant are therefore liable for these violations of Capital Storm, Generation Black, and Ncome pursuant to 7 U.S.C. § 13c(b).

104. Defendants committed the acts and practices described above using instrumentalities of interstate commerce, including the use of the telephone, internet, and interstate wires for the transfer of funds.

105. Each act of misappropriation, and each misrepresentation or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6*o*(1)(A)-(B).

106. Each act of fraudulent solicitation and/or deception, including but not limited to those specifically alleged herein, and each day of such fraudulent solicitation and/or deception, is alleged as a separate and distinct violation of violated 7 U.S.C. § 6*o*(1)(A)-(B).

**COUNT V**
**Mishandling Client Funds**
Violations of 17 C.F.R. §§ 4.30(a), 5.4 (2020)

107. The allegations set forth in the above paragraphs are re-alleged and incorporated herein by reference.

108. Pursuant to 17 C.F.R. § 4.30(a), "no commodity trading advisor may solicit, accept or receive from an existing or prospective client funds, securities or other property in the trading advisor's name (or extend credit in lieu thereof) to purchase, margin, guarantee or secure any commodity interest of the client."

109. During the Relevant Period, Capital Storm, Generation Black, and Ncome, by and through their agents Storm and Elijah Bryant, have been soliciting, accepting, and receiving in their own name funds from existing and prospective clients for purposes of trading forex by Capital Storm, Generation Black, and/or Ncome on behalf of said clients. As a result, Capital Storm, Generation Black, and/or Ncome violated 17 C.F.R. § 4.30(a).

110. Pursuant to 17 C.F.R. § 5.4 (2020), Part 4 of the Commission's Regulations applies to any person required pursuant to the provisions of Part 5 of the Commissions Regulations to register as a commodity pool operator or as a CTA. Failure by any such person to comply with the requirements of Part 4 of the Commission's Regulations will

28

constitute a violation of 17 C.F.R. § 5.4 and the relevant section of Part 4 of the Commission's Regulations. Accordingly, Capital Storm's, Generation Black's, and/or Ncome's violations of 17 C.F.R. § 4.30(a) also violated 17 C.F.R. § 5.4.

111.   During the Relevant Period, Storm and Elijah Bryant directly or indirectly controlled Capital Storm, Generation Black, and/or Ncome and did not act in good faith or knowingly, or with reckless disregard for the truth, induced, directly or indirectly, the acts constituting their violations of 17 C.F.R. §§ 4.30(a) and 5.4.

112.   Each instance in which Capital Storm, Generation Black, and/or Ncome, by and through their agents Storm and Elijah Bryant, solicited, accepted, or received from an existing or prospective client funds, securities, or other property in their respective names or the names of the Bryants for purposes of trading forex on behalf of such existing or prospective clients, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R. §§ 4.30(a) and 5.4.

<u>**COUNT VI**</u>
**Failure to Keep Required Books and Records**
Violations of 17 C.F.R. §§ 4.33, 5.4 (2020)

113.   The allegations set forth in the above paragraphs are re-alleged and incorporated herein by reference.

114.   Throughout the Relevant Period, Capital Storm, Generation Black, and/or Ncome failed to maintain the books and records required to be maintained by a CTA. As a result, Capital Storm, Generation Black, and/or Ncome have violated, are violating 17 C.F.R. § 4.33.

115.   Pursuant to 17 C.F.R. § 5.4 (2020), Part 4 of the Commission's Regulations applies to any person required pursuant to the provisions of Part 5 of the Commissions

29

Regulations to register as a commodity pool operator or as a CTA. Failure by any such person to comply with the requirements of Part 4 of the Commission's Regulations will constitute a violation of 17 C.F.R. § 5.4 and the relevant section of Part 4 of the Commission's Regulations. Accordingly, Capital Storm's, Generation Black's, and/or Ncome's violations of 17 C.F.R. § 4.33 also violated 17 C.F.R. § 5.4.

116. During the Relevant Period, Storm and Elijah Bryant were acting as the officers, employees, and/or agents of Capital Storm, Generation Black, and/or Ncome. Therefore, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2, Capital Storm, Generation Black, and Ncome are liable for Storm and Elijah Bryant's violations of 17 C.F.R. § 4.33 and 5.4.

117. Each instance in which Capital Storm, Generation Black, and/or Ncome failed to keep the required books and records, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of and 17 C.F.R. § 4.33 and 5.4.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court, as authorized by 7 U.S.C. § 13a–1, and pursuant to the Court's inherent equitable powers, enter:

1. An order finding that Defendants violated 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), (bb), 6b(a)(1)(A)-(C), 6m(1), 6k(3), and 6o(1)(A)-(B) (2018), and 17 C.F.R. §§ 4.30(a), 4.33, 5.2(b)(1), (3), 5.3(a)(3)(i) and 5.4 (2020);

2. An order of permanent injunction prohibiting Defendants and any of their agents, servants, employees, successors, assigns, attorneys, holding companies, alter egos, and any person or entity in active concert or participation with them, from directly or indirectly:

30

a. engaging in conduct that violates 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), (bb), 6b(a)(1)(A)-(C), 6m(1), 6k(3), and 6o(1)(A)-(B) (2018), and 17 C.F.R. §§ 4.30(a), 4.33, 5.2(b)(1), (3), 5.3(a)(3)(i) and 5.4 (2020);

b. trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § 1a(29) (2018));

c. entering into any transactions involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3 (2020)) for their own personal account or for any account in which they have a direct or indirect interest;

d. having any commodity interests traded on Defendants' behalf;

e. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

f. soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

g. applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring registration or exemption from registration with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9) (2020); and

h. acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a) (2020)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9) (2020).

3. An order directing Defendants, as well as any third-party transferee and/or successor thereof, to disgorge, pursuant to such procedure as the Court may order, all salaries, commissions, loans, fees, revenues, trading profits, or benefits derived from the acts or practices which constitute violations of the CEA and Regulations as described herein, and pre- and post-judgment interest;

4. An order directing Defendants and any successors thereof, to make full restitution to every person or entity who has sustained losses proximately caused by the violations described herein, including pre- and post-judgment interest;

5. An order directing Defendants and any successors thereof, to provide a full accounting of all client funds they have received during the Relevant Period as a result of the acts and practices that constituted violations of the Act and Regulations described herein;

6. An order directing Defendants and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any clients whose funds were received by them as a result of the acts and practices that constituted violations of the CEA and Regulations, as described herein;

7. An order directing Defendants to pay civil monetary penalties assessed by the Court, in an amount not to exceed the penalty prescribed by 7 U.S.C. § 13a–1(d)(1) (2018), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584 (2015), tit. VII, § 701, 129 Stat. 584, 599-600, *see* 17 C.F.R. § 143.8 (2020), for each violation of the CEA and Regulations, as described herein;

8.     An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C.

§§ 1920 and 2413(a)(2) (2018); and

9.     An order providing such other and further relief as the Court may deem necessary

and appropriate under the circumstances.


September 15, 2021                    Respectfully submitted,


                                     By:  /s/ Timothy J. Mulreany
                                     COMMODITY FUTURES TRADING COMMISSION
                                     Timothy J. Mulreany (MD Fed. Bar No. 08262)
                                     Three Lafayette Center
                                     1155 21st Street, N.W.
                                     Washington, D.C. 20581
                                     (202) 418-5306
                                     (202) 418-5523 (Facsimile)
                                     tmulreany@cftc.gov

33