UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00487-RJC-DCK

| COMMODITY FUTURES TRADING | ) |
| COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| | ) |
| STORM BRYANT, et al., | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Plaintiff's Amended *Ex Parte* Motion for a Statutory Restraining Order. (Doc. No. 12). For the reasons explained below, and for good cause shown, Plaintiff's motion is **GRANTED**[1].

On September 15, 2021, Plaintiff Commodity Futures Trading Commission (the "CFTC" or the "Commission") commenced this civil enforcement action against Storm Bryant, Elijah Bryant III, Capitalstorm LLC ("Capital Storm"), generationblack LLC ("Generation Black"), and ncome LLC ("Ncome," and collectively, "Defendants") seeking injunctive relief and civil monetary penalties. On September 16, 2021, the CFTC moved pursuant to 7 U.S.C. § 13a−1(a) (2018), for an ex parte statutory restraining order prohibiting Defendants from dissipating assets, destroying records, and refusing to allow CFTC representatives to inspect those records when and as requested.

The Court has considered the CFTC's motion and its accompanying materials, and the relevant law, and finds as follows:

---

[1] Plaintiff's originally filed motion, (Doc. No. 3), is DENIED as moot in light of this order.

1. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2018) (federal question jurisdiction), 28 U.S.C. § 1345 (2018) (jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress), and 7 U.S.C. § 13a−1(a) (jurisdiction over civil enforcement actions brought by the CFTC).

2. Venue lies properly in this District pursuant to 7 U.S.C. § 13a−1(e).

3. The Commission has made a proper prima facie showing that from at least March 2018 through the present Defendants have been engaged in a forex trading scheme to defraud existing and prospective retail clients in violation of the Commodities Exchange Act and CFTC Regulations.

4. There is good cause to believe that beginning on or about March 2018 and continuing to the present (the "Relevant Period"), Defendants, by and through Storm and Elijah Bryant, individually and on behalf of Capital Storm, Generation Black, and/or Ncome, have fraudulently solicited, and continue to fraudulently solicit, existing and prospective clients who are not eligible contract participants ("ECPs") to engage in retail transactions in off-exchange foreign currency ("forex") on a leveraged, margined, or financed basis. Defendants have received at least $1.05 million from not less than ninety-four clients during the Relevant Period, all of which Defendants misappropriated. Not less than $50,870 was sent back to clients as purported forex trading "profits" in the nature of a "Ponzi" scheme. In their solicitations to existing and prospective clients, the Bryants, both individually and on behalf of Capital Storm, Generation Black, and/or Ncome, falsely claim to trade forex on behalf of clients, falsely claimed to generate profits trading forex behalf of clients, and falsely touted their experience and history of "profitable" forex trading. The Bryants concurrently failed to advise existing and prospective clients that

Defendants were misappropriating all client funds, that no client trading accounts exist or existed, that no trading on behalf of clients ever took place, and that Defendants were engaged in an illegal business enterprise as none of the Defendants were registered with the CFTC as required by federal law.

5. Therefore, there is good cause to believe that Capital Storm, Generation Black, and Ncome, by and through Storm and/or Elijah Bryant, their agent(s), officer(s), and control person(s): (a) have engaged, are engaging, and are reasonably likely to continue engaging in fraud in connection with retail forex transactions in violation of 7 U.S.C. § 6b(a)(2)(A)−(C) (2018) and 17 C.F.R. § 5.2(b)(1), (3) (2020); (b) have acted, are acting, and are reasonably likely to continue acting as unregistered retail forex commodity trading advisors in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(bb), 6m(1) (2018), and 17 C.F.R. § 5.3(a)(3)(i) (2020); (c) have acted, are acting, and are reasonably likely to continue acting as unregistered associated persons of commodity trading advisors in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(aa), 6k(3) (2018), and 17 C.F.R. § 5.3(a)(3)(ii) (2020); (d) have engaged, are engaging, and are reasonably likely to continue engaging in fraud while acting as commodity trading advisors and associated persons of commodity trading advisors in violation of 7 U.S.C. § 6o(1)(A), (B) (2018); (e) have been soliciting, accepting, and receiving and are reasonably likely to continue soliciting, accepting, and receiving in the Bryants' names funds from existing and prospective clients purportedly for purposes of trading forex in violation of 17 C.F.R. § 4.30(a) (2020); and (f) have failed, are failing, and are reasonably likely to continue failing to keep certain required books and records in violation of 17 C.F.R. § 4.33 (2020).

6. There is also good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for clients in the form of monetary or other redress will

3

Case 3:21-cv-00487-RJC-DCK   Document 14   Filed 09/24/21   Page 3 of 8

occur from the withdrawal, transfer, removal, dissipation or other disposition of funds, assets, or other property ("assets") and/or the destruction, alteration, or disposition of books and records and other documents ("records") by Defendants, unless Defendants are immediately restrained and enjoined by Order of the Court.

7. Therefore, there is good cause for the Court to issue an ex parte statutory restraining order prohibiting Defendants from withdrawing, transferring, removing, dissipating, or otherwise disposing of any assets owned, controlled, managed or held by Defendants, or in which they have any beneficial interest.

8. There is also good cause for the Court to prohibit Defendants from destroying, altering or disposing of any records, and from denying representatives of the Commission access to inspect records, when and as requested, to ensure that Commission representatives have immediate and complete access to those records.

9. Therefore, the Court orders the relief set forth below.

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

10. The term "assets" encompasses any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all funds, wherever located, whether in the United States or outside the United States.

11. The term "records" encompasses "documents" and "electronically stored information" as those terms are used in Rule 34(a) of the Federal Rules of Civil Procedure, and includes, but is not limited to, all writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or other data compilations—stored in any medium from which information can be obtained or translated, if necessary, into reasonable usable form. The term "records" also refers to each and every such item in Defendants' actual or constructive possession, including but not limited to: (i) all such items within the custody or control of any agents, employers, employees, or partners of Defendants; and (ii) all items that Defendants have a legal or equitable right to obtain from another person. A draft or non-identical copy is a separate item within the meaning of the term. A record also includes the file and folder tabs associated with each original and copy.

12. "Defendants" refer to Storm Bryant, Elijah Bryant III, Capitalstorm LLC ("Capital Storm"), generationblack LLC ("Generation Black"), and ncome LLC ("Ncome," and collectively, "Defendants"), and/or any person insofar as he or she is acting in the capacity of an officer, agent servant, employee, and/or attorney of the Defendants and any person or entity who receives actual notice of this Order by personal service or otherwise insofar as he, she or it is acting in concert or participation with the Defendants.

## RELIEF GRANTED

**IT IS, THEREFORE, ORDERED** that:

I. **Statutory Restraining Order Prohibiting the Withdrawal, Transfer, Removal, Dissipation, and Disposal of Assets**

13. Defendants are immediately restrained and enjoined, except as otherwise ordered by this Court, from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any assets, wherever located, including Defendants' assets held

5

outside the United States.

## II. Maintenance of All Records Relating to the Business Activities, and Business and Personal Finances

14. Defendants are restrained and enjoined from directly or indirectly destroying, altering, or disposing of, in any manner, any records that relate or refer to the business activities or business or personal finances of any Defendant.

## III. Notice to Financial Institutions and Others that Hold or Control Assets or Records

15. To ensure the effectiveness of the asset freeze and pending further Order of this Court, any financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any asset or other property of Defendants shall not, in active concert or participation with Defendants, permit Defendants or other persons to withdraw, transfer, remove, dissipate, or otherwise dispose of any of Defendants' assets, except as directed by further order of the Court.

16. Any financial or brokerage institution, business entity, or person that receives notice of this Order by personal service or otherwise shall not, in active concert or participation with any Defendant, directly or indirectly destroy, alter or dispose of, in any manner, any records relating to the business activities and business and personal finances of any Defendant.

17. Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any account or asset of any Defendant, or has held, controlled, or maintained custody of any such account or asset of any Defendant at any time since March 2018, shall not, in active concert or participation with Defendants, deny a request by the Commission to inspect all records pertaining to every account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, including, but not limited to, originals or copies of account

applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. As an alternative to allowing inspection of records, a financial or brokerage institution, business entity or other person may provide copies of records requested by the Commission.

## IV. Persons Bound By this Order

18. This Order is binding on Defendants, and any person who receives actual notice of this Order by personal service or otherwise and is acting in the capacity of an officer, agent, servant, employee, or attorney of Defendants, or is in active concert or participation with Defendants.

## V. Bond Not Required of The Commission

19. As the Commission has made a proper showing under 7 U.S.C. § 13a−1(b) (2018), it is not required to post any bond in connection with this Order.

## VI. Service of Order and Assistance of United States Marshals Service and/or Other Law Enforcement Personnel

20. Copies of this Order may be served by any means, including via email or facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any records or assets of any Defendant, or that may be subject to any provision of this Order.

21. Representatives of the Commission and the United States Marshals Service are specially appointed by the Court to effect service.

22. The United States Marshals Service authorized to: (a) accompany and assist the Commission representatives in the service and execution of this Order on Defendants, and (b) help maintain lawful order while Commission representatives inspect records as

provided in this Order.

## VII. Service on the Commission

23. Defendants shall comply with all electronic filing rules and requirements of the U.S. District Court of the Western District of North Carolina and shall serve all pleadings, correspondence, notices required by this Order, and other materials on the Commission by electronic filing or by e-mail to Timothy Mulreany, Division of Enforcement, Commodity Futures Trading Commission, at tmulreany@cftc.gov.

## VIII. Further Proceedings

24. Plaintiff's Motion for a Preliminary Injunction is set for hearing on Friday, October 8, 2021, at 10 a.m. in courtroom 4A at the United States District Court for the Western District of North Carolina, 401 West Trade Street, Charlotte, NC 28202. Should Defendants wish to file a memorandum of law or other papers concerning the issuance of a preliminary injunction against Defendants, such materials shall be filed, served and received by all parties at least two days before the hearing ordered above.

## IX. Force and Effect

25. Pursuant to Rule 65(b)(2), this Order shall remain in full force and effect until this Court orders otherwise and this Court retains jurisdiction of this matter for all purposes.

Signed: September 24, 2021

Robert J. Conrad, Jr.
United States District Judge