UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00487-RJC-DCK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) **Order** |
| STORM BRYANT, GENERATIONBLACK LLC, ELIJAH BRYANT III, NCOME LLC, and CAPITALSTORM LLC, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** comes before the Court on Plaintiff's First Motion for Issuance of Order to Show Cause as to why Defendants Should not be Held in Civil Contempt for Violation of the Consent Order of Preliminary Injunction, (DE 35); Plaintiff's Motion to Strike Defendants' Motion for Leave to File Surreply, (DE 43); Defendants' Amended Motion for Leave to File Surreply and Request for Hearing, (DE 45); and Defendants' Motion to Strike Section II of the Commission's Opposition to Defendants' Amended Motion for Leave, (DE 51). The matter is ripe for adjudication.

**I.     BACKGROUND**

On September 15, 2021, Plaintiff Commodity Futures Trading Commission ("Plaintiff" or "Commission") filed a Complaint against Defendants Storm Bryant, Elijah Bryant III, Generationblack LLC, Ncome LLC, and Capitalstorm LLC (collectively, "Defendants"). The Complaint alleges that Storm and Elijah Bryant, individually and through the LLCs, fraudulently solicited clients to engage in transactions in off-exchange foreign currency ("forex"). (DE 1). The

Complaint further alleges that Defendants received at least $1.05 million from at least ninety-four clients of which $50,870 was sent back to clients as purported forex profits in the nature of a Ponzi scheme. *Id.*

On September 24, 2021, the Court granted the Commission's motion for an *ex parte* statutory restraining order prohibiting Defendants from dissipating assets and destroying records. (DEs 14). The Court then granted the Parties' joint motion for entry of consent preliminary injunction ("Consent Order") on October 28, 2021. (DE 25). The pertinent sections of the Consent Order are listed below:

> 13. Defendants . . . are restrained from directly or indirectly destroying, mutilating, erasing, altering, concealing or disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or business or personal finances of Defendants. Representatives of the Commission shall be immediately allowed to inspect the books, records, and other documents of Defendants . . . and to copy said documents, data and records, either on or off the premises where they may be situated.
>
> 14. Defendants shall, within 24 hours of the service of this Order upon them, cause to be prepared and delivered to the Commission, a detailed and complete schedule of all passwords for any encrypted ESI . . . . Defendants shall, within 24 hours of the service of this Order upon them, cause to be prepared and delivered to the Commission, a detailed and complete schedule of all desk top computers, laptop computers and/or other computers owned and/or used by them in connection with their business. The schedules required by this section shall include at a minimum the make, model and description of each, along with the location, the name of the person primarily assigned to use the computer, and all passwords necessary to access and use the software contained on the computer and/or PDA.
>
> 15. Within five (5) days of the date of this Order, the Defendants shall deliver to the Commission an accounting of the disposition of all assets accepted by the Defendants from each participant in the Defendants' pool, from the date of receipt to the date of this Order. Defendants shall also deliver to the Commission a list identifying each participant in the pool, including each participant's name, address, telephone number and email address.
>
> 16. Within five (5) days following the service of this Order, Defendants shall provide the Commission immediate access to all records of Defendants held by financial institutions located within or outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order and

2

submitting same to counsel for the Commission.

(DE 25 at 7–8).

On October 27, 2021, Defendants filed a motion to dismiss for failure to state a claim. (DE 24). That motion remains pending. Defendants then moved to stay the expedited discovery provisions of the Consent Order pending a ruling on the motion to dismiss. (DE 31). This Court denied that motion on March 22, 2022, and ordered Defendants to comply with the Consent Order. (DE 34).

On March 28, 2022, the Commission filed the instant motion for order to show cause, alleging that Defendants continue to violate the Consent Order by failing to allow immediate inspection and failing to provide certain required information. (DE 35). After the Commission allegedly raised new arguments in its reply, Defendants filed a motion for leave to file a surreply. (DE 42). The Commission then filed the instant motion to strike Defendants' motion for leave, arguing that Defendants failed to follow local rules. (DE 43). Thereafter, Defendants withdrew their motion for leave to file a surreply and filed the instant amended motion for leave to file a surreply. (DEs 45, 46). Defendants' also filed a motion to strike portions of the Commission's response to the amended motion for leave to file a surreply. (DE 51).

## II. COMMISSION'S MOTION TO STRIKE DEFENDANTS' MOTION FOR LEAVE TO FILE SURREPLY

The Commission seeks to strike Defendants' original motion for leave to file a surreply. However, as Defendants have withdrawn the original motion, the Commission's motion to strike is moot.

## III. DEFENDANTS' AMENDED MOTION FOR LEAVE TO FILE SURREPLY AND REQUEST FOR HEARING

Local Rule 7.1(e) prohibits surreplies absent leave of Court for good cause. However, the Local Rules are "are not intended to bind any judicial officer to any particular course of action or

3

result.  Each judicial officer retains the discretion to apply the Local Civil Rules in a manner consistent with the demands of the case." L.R. 1.1.  Defendants contend the Commission's argument has changed from the original motion to its reply as a result of changed factual circumstances.  Mainly, that Defendants produced 400 documents after the Commission filed its show cause motion.  Defendants admit that at the time of the show cause motion they "had only produced a three-page document containing a list of passwords and electronic devices." (DE 45 at 1–2).  However, as a result of the 400-page production, Defendants believe they are in substantial compliance with the Consent Order.  Defendants also note that the Commission's argument changed from the show cause motion (Defendants have only produced a three-page list of passwords and devices) to the reply (Defendants' supplemental production fails to place Defendants in compliance).  The Commission, in opposition, argues that there are no new facts or arguments and the motion revolves around a singular issue—Defendants' failure to comply with the Consent Order.  (DE 47 at 3).

While the Court is aware that the underlying issue—whether Defendants have complied with the Consent Order—is unchanged, the underlying facts have changed as Defendants produced documents after the Commission filed its show cause motion.  This changes the arguments and analysis as Defendants were clearly, and self-admittedly, in violation of the Consent Order before the production.  Accordingly, this type of situation warrants a surreply as certain factual and legal arguments have changed.  Moreover, as Defendants' motion for leave to file a surreply is granted, Defendants' motion to strike section II of the Commission's opposition to Defendants' motion for leave is denied as moot.

### IV. COMMISSION'S MOTION FOR SHOW CAUSE ORDER AS TO WHY DEFENDANTS SHOULD NOT BE HELD IN CIVIL CONTEMPT

To establish civil contempt, a movant must show each of the following elements by clear

4

and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (quoting *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1405–06 (E.D. Va. 1992), *aff'd*, 38 F.3d 133 (4th Cir. 1994)). "When a district court's decision is based on an interpretation of its own order, [the appellate court's] review is even more deferential because district courts are in the best position to interpret their own orders." *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004). Prior to holding a person in contempt, the district court must provide the alleged contemnor notice and opportunity for a hearing. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27 (1994). The "party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence.'" *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

    **A.**    **The Parties' Show Cause Motion Briefing**

The Commission argues that Defendants failed to comply with the Consent Order by: (1) failing to provide access to electronic devices for inspection and imaging, (2) failing to provide documents or business records, (3) failing to provide a list with contact information for all clients, (4) failing to provide an accounting of all client assets, (5) failing to provide access to financial institutions and signing necessary releases, (6) failing to provide a complete list of passwords for encrypted ESI, and (7) failing to provide a schedule of all computer equipment. (DE 35 at 2). In regard to allowing access for inspection and copying of records and devices, the Commission argues that Defendants are required to either deliver their electronic devices in person to the

5

Commission, mail their devices to the Commission, or upload all records via an FTP site. *Id.* at 8. As a result of the alleged violations, the Commission seeks severe remedies.[1] (DE 41 at 9).

Defendants admit in their April 25, 2022 response that they are not in full compliance with the Consent Order but argue that they are in substantial compliance and will soon be in full compliance. (DE 40 at 1). In particular, Defendants argue that they have no affirmative duty to produce books, records, and electronic devices to the Commission per the Consent Order. *Id.* at 3. Instead, they note that the Consent Order only prevents destruction of the books, records, and electronic devices and requires Defendants to provide the Commission access to the books, records, and electronic devices for inspection and copying. *Id.* In regard to providing a list of all clients, with their contact information, and an accounting of all client assets, Defendants note that "with the exception of five file folders that would not 'zip'" because of corrupted files, Defendants have provided that information to the Commission via an FTP site. *Id.* at 5. In regard to signing releases for access to financial institutions, Defendants note that the Consent Order says that Defendants agree to sign "the Consent to Release of Financial Records attached to this Order" (hereinafter, "Release"). *Id.* at 5; (DE 25 at 8). However, as there was no Release attached to the Consent Order, Defendants argue there was no meeting of the minds and there is no requirement to sign the Release which the Commission recently emailed to Defendants. Defendants failed to

---

[1] "The Commission moves this Court for an order finding each of the Defendants in contempt, and ordering each of the Defendants to immediately appear at the federal courthouse in Charlotte, North Carolina, to immediately surrender all computers, laptops, cell phones, tablets, ESI, business records, communications, trading records, financial records, bank records, crypto currency records, E-Wallets addresses and passwords, and all other records over which this Court has exclusive jurisdiction, as set-forth in the Consent PI Order. Further, the Commission moves this Court to order each of the Defendants to present themselves in Charlotte, North Carolina, for eight (8) hours of deposition testimony each, so that the Commission may discover the actual disposition of client funds, business records, computer devices, the operation of the Defendant's fraudulent scheme, and all other relevant facts associated with this matter. Further, the Commission moves this court to impose a fine of $1,000 per day against each Defendant for their contempt of this court's authority, beginning on October 25, 2021, and continuing until the Defendants purge their respective contempt; alternatively, the Commission moves this court to fine the Defendants as moved above, and also issue a bench warrant for the arrest of Storm Bryant and Elijah Bryant, to be held in federal custody until such time as they fully and completely purge their contempt."

address whether they provided a complete list of passwords for encrypted ESI and a schedule of all computer equipment.

In reply, the Commission notes that Defendants have only produced 400 documents (after the Commission filed the present show cause motion) and that trading records, bank records, and cryptocurrency accounts should have thousand of pages of records which are missing here. (DE 41 at 2). The Commission also notes that Defendants have still not produced electronic devices, a complete list of passwords for encrypted ESI (*e.g.*, cryptocurrency E-wallet passwords), and a schedule of all computer equipment. *Id.* 2-7. In regard to client information, the Commission says that the required contact information ("name, address, telephone number and email address") has not been provided and that only names have been provided. *Id.* at 7. And no accounting of clients' assets has been provided; instead screen shots of Elijah Storm's personal trading account were provided. *Id.* at 6.

In the surreply, Defendants note that they voluntarily agreed to ship electronic devices to the Commission and that they produced documents even though the Consent Order only requires that they provide access to the records and electronic devices. (DE 45-1 at 3–4). Defendants also note that their production shows, to the best of their ability, an accounting of client assets with "paper trails" of the money. *Id.* at 5. Defendants further note that they previously responded to Commission subpoenas and provided information which identified client contact information (*i.e.*, names and phone numbers), the amount of money taken from each client, and the amount returned to each client. *Id.* at 6. Both Storm and Elijah Bryant filed declarations that they have provided all client contact information available to them and fully complied to the best of their ability in providing an accounting of all client assets. *Id.* at 8. In regard to a complete list of passwords and a schedule of all computer equipment, Defendants note that they previously emailed, on October

7

28, 2021, login credentials for all accounts pertaining to the conduct at issue in the lawsuit along with a schedule of electronic devices including the Bryant's two computers and three iPhones. *Id.* at 13; (DE 45-10). In the schedule, the username, device name, model number, and login password were provided. *Id.*

**B. Discussion**

In determining whether a show cause order is necessary, the Court will determine whether there is an ongoing violation of the Consent Order.

i. <u>Providing Access to Electronic Devices for Inspection and Copying</u>

The Consent Order provides that the "Commission and/or its representative shall be authorized to make an electronic, digital or hard copy of all of the data contained on the computer(s)." (DE 25 at ¶14). Defendants offered the Commission to inspect and copy their electronic devices in Panama where they are located. They have also offered to mail the devices in staggered shipments so that they do not lose all their computers and phones at one time. The Commission declined to inspect and copy in Panama and argues that Defendants are required to immediately produce all electronic devices in person or via mail. As of May 3, 2022, Defendants have mailed one phone and one laptop in a first staggered shipment. (DE 45-11).

The Consent Order only requires that Defendants allow the Commission access to inspect and copy the data on Defendants' electronic devices. It does not provide the mechanism by which the Commission is to gain access. As there are no facts which show that Defendants actively prevented the Commission from accessing the devices, there is no violation of the Consent Order at this time. Nonetheless, the Court encourages the Parties to continue with the staggered shipment approach.

ii. <u>Providing Access to Documents and Business Records</u>

The Consent Order provides that the "Commission shall be immediately allowed to inspect the books, records, and other documents of Defendants and their agents . . . and to copy said documents, data and records, either on or off the premises where they may be situated." (DE 25 at ¶13). The Commission argues this requires Defendants to produce all such documents in person, by mail, or via an FTP link. In response, Defendants contend that the Consent Order only requires them to allow access to the documents and does not place the affirmative duty of "producing" the documents on Defendants.

A plain language reading of the Consent Order shows that Defendants are only required to allow the Commission to inspect the documents. The Consent Order does not state the mechanism by which inspection can occur but does mention the possibility of the Commission inspecting the documents on site. To date, Defendants have offered the FBI in Panama to inspect the records and have begun producing documents via an FTP link. Failure to produce these documents is not equivalent with preventing access to the documents. Thus, there is insufficient evidence to show a violation of the Consent Order at this time as Defendants have yet to prevent the Commission from inspecting the documents.

   iii. <u>Providing a List with Contact Information for all Clients</u>

The Consent Order provides that "Defendants shall also deliver to the Commission a list identifying each participant in the pool, including each participant's name, address, telephone number and email address." (DE 25 at ¶15). In its motion, the Commission asserts that Defendants failed to produce any client contact information. (DE 35 at 3). In its reply, filed after Defendants' document production, the Commission argues that the "required contact information ('name, address, telephone number and email address') has not been provided" and notes that in one instance Defendants also provided a Facebook name. (DE 41 at 7). The Commission thus argues

that, aside from providing the names of the clients, Defendants failed to provide other contact information as required per the Consent Order. However, the Commission failed to identify specific clients or contact information that was missing.

Defendants argue that they have produced all client contact information in their possession. (DE 40 at 5; DE 45-1 at 8; DE 45-8 (Storm Bryant Dec.) at ¶¶2–3; DE 45-9 (Elijah Bryant Dec.) at ¶¶2-3). Defendants document production provides a list of client names with phone numbers and/or Facebook names. (DE 45-18 at 42). In their declarations filed on May 10, 2022, the Bryant's note that a few client files were corrupt and that they recently found twenty-one additional client names that were inadvertently omitted from the document production. The Bryant's attested that this would be rectified and the information would be provided to the Commission within days after the declarations were filed.

At this point, to the best of the Court's knowledge, Defendants have provided a complete list of client names and available contact information to the Commission. Accordingly, the facts do not currently show that Defendants are violating the Consent Order.

        iv.      <u>Providing an Accounting of all Client Assets</u>

The Consent Order provides that "Defendants shall deliver to the Commission an accounting of the disposition of all assets accepted by the Defendants from each participant in the Defendants' pool, from the date of receipt to the date of this Order." (DE 25 at ¶15). This is an affirmative duty that requires defendants to deliver an accounting to the Commission. The Commission notes that, while Defendants have recently produced 400 pages of documents, trading records, bank records, and cryptocurrency accounts should have thousands of pages of records. The Commission appears to be arguing that Defendants have failed to produce sufficient information to account for the disposition of all client assets. Defendants note that it previously

10

Case 3:21-cv-00487-RJC-DCK   Document 52   Filed 06/06/22   Page 10 of 14

responded to subpoenas identifying individual clients, the amount of money taken from each client, the amount returned to those clients, and the overall loss percentage. (DE 45-1 at 6). Defendants also recently produced annotated screen shots of bank account transfers and trade histories showing a "paper trail" for the clients. (DE 45-18). The Commission does not believe the crude accounting is sufficient, but the Commission failed to provide a list of information and documents that it believes are missing, broken down by each client.

While the Parties may disagree on the required level of detail in the accounting, without more information showing that Defendants failed to provide pertinent and knowable accounting information, a show cause order for violation of the Consent Order is improper at this time. To the extent the Commission maintains that the accounting is in violation of the Consent Order, the Commission is advised to refile with a specific breakdown of missing information for each client. However, the Commission is first advised to inspect, copy, and review Defendants' documents and business records before refiling.

v. <u>Providing Access to Financial Institutions and Signing Necessary Releases</u>

The Consent Order provides that "Defendants shall provide the Commission immediate access to all records of Defendants held by financial institutions . . . by signing the Consent to Release of Financial Records attached to this Order." (DE 25 at ¶15). The Commission argues that Defendants are in violation of the Consent Order for failing to sign the Release. Defendants note that there was a clerical error as the Consent Order did not include the "attached" Release. They argue there was no meeting of the minds and there is no requirement to sign the Release which the Commission recently emailed to Defendants.

Here, the plain language of the Consent Order shows the Parties agreed that Defendants would sign a Release. Thus, should Defendants fail to meet and confer in good faith regarding the

11

content of the Release, and ultimately sign a Release, this would violate the Consent Order. The Court thus encourages the Parties to work together to draft and execute the Release without Court intervention. While there is no violation at this time, should Defendants fail to work with the Commission in drafting and executing an acceptable Release, a show cause order may be proper.

> vi. Providing a Complete List of Passwords for Encrypted ESI

The Consent Order provides that "Defendants shall . . . cause to be prepared and delivered to the Commission, a detailed and complete schedule of all passwords for any encrypted ESI in the possession or control of Defendants that relate to the business practices of Defendants or the business or personal finances of Defendants." (DE 25 at ¶14). In its motion, the Commission argues that Defendants failed to produce a list of passwords for encrypted ESI. The only example provided by the Commission is passwords for cryptocurrency E-Wallets (*e.g.*, Bitcoin). (DE 35 at 3, 6; DE 41 at 7). Defendants note that they provided "login credentials for all accounts used for activities related to the conduct at issue in the lawsuit" via email on October 28, 2021. (DE 45-10). However, it is unclear whether this included any cryptocurrency E-Wallets.

To the extent cryptocurrency was part of the conduct at issue, Defendants are required to provide E-Wallet passwords. Should Defendants fail to do so, the Court will consider a renewed show cause order on this issue.

> vii. Providing a Schedule of all Computer Equipment

The Consent Order provides, in part:

Defendants shall . . . cause to be prepared and delivered to the Commission, a detailed and complete schedule of all desk top computers, laptop computers and/or other computers owned and/or used by them in connection with their business. The schedules . . . shall include at a minimum the make, model and description of each, along with the location, the name of the person primarily assigned to use the computer, and all passwords necessary to access and use the software contained on the computer and/or PDA."

12

(DE 25 at ¶14). On October 28, 2021, Defendants emailed the Commission a schedule of electronic devices with them in Panama that included two MacBook computers and three iPhones. (DE 45-10; DE 45-1 at 13). The schedule included the person who controlled to device (Elijah or Storm Bryant), the model name, and the password to access the device. *Id.* The Commission has not asserted, or provided evidence, that Defendants failed to include other relevant electronic devices on the schedule. Nor has the Commission alleged that the schedule was missing required information. Absent more, the broad assertion that Defendants have failed to produce the schedule in violation of the Consent Order is unsupported.

## V. CONCLUSION

While the Court declines to issue a show cause order at this time, it will reconsider a renewed show cause motion in the future should Defendants violate the Consent Order. However, the Commission is encouraged to inspect, copy, and review all documents and records before renewing the show cause motion. And, should the Commission elect to renew the motion, the Commission is advised to list the specific provisions of the Consent Order that are being violated and to list the exact information that is missing or needed on a per client basis if possible.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion to Strike Defendants' Motion for Leave to File Surreply, (DE 43) is **DENIED as moot**.

2. Defendants' Amended Motion for Leave to File Surreply and Request for Hearing, (DE 45), is **GRANTED in part** as to the motion for leave and **DENIED in part** as to the hearing request.

3. Defendants' Motion to Strike Section II of the Commission's Opposition to Defendants' Amended Motion for Leave, (DE 51), is **DENIED as moot**.

4. Plaintiff's First Motion for Issuance of Order to Show Cause as to why Defendants

Should not be Held in Civil Contempt for Violation of the Consent Order of Preliminary Injunction, (DE 35), is **DENIED**.

**SO ORDERED**.

Signed: June 6, 2022

Robert J. Conrad, Jr.
United States District Judge