IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-487-RJC-DCK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) MEMORANDUM AND ) RECOMMENDATION |
| STORM BRYANT, ELIJAH BRYANT, III, CAPITALSTORM LLC, GENERATIONBLACK LLC, and NCOME LLC, | ) ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER IS BEFORE THE COURT** on Defendants' "Motion To Dismiss" (Document No. 24). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>denied</u>.

### I. BACKGROUND

Plaintiff, the Commodity Futures Trading Commission ("Plaintiff" or "CFTC"), initiated this action with the filing of a "Complaint For Injunctive And Other Equitable Relief And For Civil Monetary Penalties Under The Commodity Exchange Act" (Document No. 1) on September 15, 2021. In the Complaint, Plaintiff alleges that Defendants have and continue to "fraudulently solicit[]…existing and prospective clients who are not eligible contract participants [a term of art under the relevant statute]…to engage in retail transactions in off-exchange foreign currency ('forex') on a leveraged, margined, or financed basis." <u>Id.</u> at p. 1. Plaintiff contends that

"Defendants have received at least $1.05 million from not less than ninety-four clients during the Relevant Period, all of which Defendants misappropriated." Id. These clients were *not* eligible contract participants – a term defined in the statute, which one court paraphrased as "individual[s] who ha[ve] amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual entered into the transaction to man[a]ge the risk associated with an asset owned or liability incurred or reasonably likely to be owned or incurred by that individual." United States Commodity Futures Trading Commission v. Cook, 2016 WL 128131, at *4 (D. Minn. Jan. 12, 2016) (citing 7 U.S.C. § 1a(18)(A)(xi)). Further, in violation of relevant law, Plaintiff contends that "Defendants Capital Storm, Generation Black, and Ncome, without registering with the Commission as commodity trading advisors ('CTAs'), and Defendants Storm and Elijah Bryant, without registering as associated persons ('APs') of a CTA, respectively," conducted activity on both various social media sites and a website to "induce…retail clients to send Defendants funds." Id. at p. 2. Instead of following through as promised on trading foreign currency with the money that their clients invested, Defendants, Plaintiff alleges, instead "misappropriated the funds by receiving them or moving them into accounts held by Storm and/or Elijah Bryant in their own names and using the funds to purchase jewelry, rent homes, travel to Europe, and fund the Bryants' personal trading accounts." Id.

Plaintiff contends that Defendants perpetuated this "'Ponzi' scheme" by "return[ing] approximately $50,870 to some clients as withdrawals of principal or as purported trading profits." Id. at p. 4. Defendants allegedly made various misrepresentations to their clients that 1) "clients' funds would be used to open trading accounts in their names and to trade forex on their behalf;" 2) "Defendants were successful and profitable traders who generated enormous returns for their clients;" 3) "Defendants generated daily returns trading clients' forex accounts as high as 27.8%

2

in a single day;" and 4) "Defendants were not required to be registered with the Commission to conduct their business operations." Id. at p. 2.

At a high level, the Complaint alleges that Defendants violated relevant provisions of the Commodity Exchange Act ("CEA") by fraudulently soliciting clients to send money to them under the false promise that Defendants would trade off-exchange foreign currency on behalf of the clients to generate large returns for them. Importantly, the CFTC concedes that "none of the at least $1.05 million received by Defendants from clients was used to trade forex on behalf of clients." Id. at p. 3. Indeed, "Defendants did not open any U.S. forex trading accounts during the Relevant Period, and did not hold a power of attorney at any registered futures commission merchant ('FCM') or retail foreign exchange dealer ('RFED') to trade forex in a client's account." Id. Moreover, "all forex accounts Defendants opened offshore were in the names of Storm Bryant or Elijah Bryant." Id. Thus, the allegations at base are that Defendants *offered* to trade foreign currency for their clients but never did and never had any actual intention of trading as promised.

Plaintiff makes six claims against Defendants under the Commodity Exchange Act: 1) fraud in connection with commodity futures contracts; 2) failure to register as commodity trading advisors; 3) failure to register as an associated person of a commodity trading advisor; 4) fraud by a commodity trading advisor; 5) mishandling client funds; and 6) failure to keep required books and records. Id. at pp. 21-30. The CFTC seeks to "enjoin Defendants' unlawful acts and practices, and to compel their compliance with the CEA and Regulations." Id. at p. 6. Furthermore, the CFTC also "seeks civil monetary penalties" from Defendants and "remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, and pre- and post-judgment interest." Id.

The procedural context of the case leading up to and immediately following Defendants' filing of their motion to dismiss is notable. Indeed, as stated in the Honorable Robert J. Conrad, Jr.'s June 6, 2022 Order recounting some procedural background of the case, "the Court granted the Commission's motion for an *ex parte* statutory restraining order prohibiting Defendants from dissipating assets and destroying records" on September 24, 2021. (Document No. 52, p. 2); see (Document No. 14). Thereafter, "[t]he Court then granted the Parties' joint motion for entry of consent preliminary injunction" on October 28, 2021. (Document No. 52, p. 2); see (Document No. 25). The Consent Preliminary Injunction was therefore entered one day after Defendants filed their motion to dismiss, as described below.

Defendants filed their "Motion To Dismiss" (Document No. 24) and "Memorandum In Support Of Motion To Dismiss" (Document No. 24-1) on October 27, 2021. The CFTC filed its "Opposition To Defendants' Motion To Dismiss" (Document No. 26) on November 8, 2021. Defendants filed their "Reply To Plaintiffs'[sic] Opposition To Defendants' Mot[io]n To Dismiss" (Document No. 29) on November 22, 2021.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

By the instant motion, Defendants argue that the CFTC "lacks jurisdiction to pursue these claims." (Document No. 24-1, p. 1). Indeed, Defendants point out that the Commodity Exchange Act limits the CFTC's jurisdiction with respect to foreign currency transactions, requiring that there actually be "an agreement, contract, or transaction…'in' foreign currency." Id. at pp. 1, 3. Defendants contend that the CFTC's theory is that "Defendants held themselves out (fraudulently)

5

as successful forex traders but, in actuality weren't really doing any forex trading – opening no accounts and conducting no trades." Id. at p. 2. Instead, Plaintiff's theory according to Defendants is that what Defendants were really engaged in was "lying to their prospective clients about [transacting in foreign currency] and stealing (misappropriating) the money that came in." Id. This type of behavior, Defendants allege, is not within the scope of the CFTC's jurisdiction to regulate. Defendants argue that the offer alone to transact is not enough – there must actually be a transaction for the CFTC to have jurisdiction.

The CFTC disagrees with Defendants' argument, contending that "the plain language of 7 U.S.C. §§ 2(c)(2)(C)(i)(I)(aa) and 2(c)(2)(C)(vii)…confer[] jurisdiction upon the Commission over fraudulent retail forex schemes where persons, such as the Defendants, merely offer to engage in retail forex transactions, accept client funds, but then do not actually engage in the transactions." (Document No. 26, p. 2). The CFTC points to two statutory provisions that it contends confer jurisdiction upon its ability to regulate here given the present facts. The first provision states that the Commission has jurisdiction over "any agreement, contract, or transaction in foreign currency that is offered to, or entered into with, a person that is not an eligible contract participant…and…offered, or entered into, on a leveraged or margined basis." 7 U.S.C. §§ 2(c)(2)(C)(i)(I)(aa), (bb). The second provision the CFTC points to in order to support its jurisdiction states that "the Commission shall have jurisdiction over, an account or pooled investment vehicle that is offered for the purpose of trading, or that trades, any agreement, contract, or transaction in foreign currency." 7 U.S.C. § 2(c)(2)(C)(vii). The key, Plaintiff argues, is that these statutory provisions are phrased in a way that "there is simply no requirement that a defendant must actually enter into such transactions, [rather] the mere *offer* is sufficient to confer jurisdiction." (Document No. 26, p. 8) (emphasis added).

Plaintiff also dedicates a portion of its responsive brief to detailing the legislative history of the Commodity Exchange Act and the various revisions, contending that the 2008 amendment clarified that the CFTC has jurisdiction "over the retail off-exchange forex transactions at issue herein." Id. at pp. 8-11. Defendants again take issue with Plaintiff's argument in their reply, suggesting that the CFTC would only have jurisdiction where Defendants "were engaging in foreign currency transactions or at the very least have [had] the intention of doing so" – neither of which are present in the instant facts, they argue. (Document No. 29, p. 5). "[P]urported transactions that form the basis of an entirely fraudulent ponzi scheme that is, in actuality, performing no transactions at all" do not fall under the CFTC's jurisdiction to regulate, Defendants argue. Id. at p. 8. Even assuming the "statutory language is ambiguous," Defendants suggest that the Court should apply the rule of lenity. Id. at p. 2.

The undersigned finds that caselaw regarding this narrow issue is admittedly sparse, and the Court highlights that neither side cites caselaw directly on point – that is, directly addressing whether the jurisdictional provision of the Commodity Exchange Act permits the CFTC to sue a defendant for merely offering to engage in an off-exchange retail foreign currency transaction but not actually conducting any transactions on behalf of such clients. Indeed, although Defendants point out that the cases that the CFTC cites in its brief mostly "involved defendants who were actually trading in forex," Defendants even concede that not all the cases involved actual transacting in foreign currency – some involved mere *offers* to transact. (Document No. 29, p. 6); see (Document No. 26, p. 7). Notably, in a district court case from Minnesota, the facts are very similar to those present in this case. Although the court there was addressing a summary judgment motion, and jurisdiction was not challenged, the defendant there was found to have violated the Commodity Exchange Act where no "funds [were] used for forex trading" but instead were

"misappropriated" and used for personal benefit. Cook, 2016 WL 128131, at *3-*5. Furthermore, although addressing a motion for default judgment, and while the court did not address the jurisdictional issue presented here, it is noteworthy that there is a case from this district in which the court granted the CFTC's motion for default judgment where the defendant "never engaged in any trading of forex…[and his] trading platform never existed…[because he instead] misappropriated [customer] funds." U.S. Commodity Futures Trading Commission v. Simmons, 3:11-CV-023-RJC-DCK, 2017 WL 4159970, at *2, *6 (W.D.N.C. Sept. 19, 2017).

Under these circumstances, and without the assistance of on-point precedent addressing the jurisdictional issue head-on that the undersigned can find, it appears the language of the statute supports the CFTC's jurisdiction to pursue suit against Defendants in this case.[1] It is not disputed that the CFTC is alleging that "Defendants made various misrepresentations and other fraudulent statements regarding forex trading" to clients in order to solicit funds. (Document No. 24-1, p. 2). Moreover, the undersigned highlights that Defendants do not direct the Court to *any* caselaw on point to support their argument that the Court should adopt their interpretation of the statute. See (Document No. 29, pp. 2-6). Based on the language of the statute which confers jurisdiction where a transaction in foreign currency is "offered," and without more elucidating caselaw, it appears to the undersigned that the CFTC has jurisdiction to pursue suit in the instant case. See 7 U.S.C. §§ 2(c)(2)(C)(i)(I)(aa), (bb).

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants' "Motion To Dismiss" (Document No. 24) be **DENIED**.

---

[1] While interpreting a different provision of the statute, the Ninth Circuit held that the CFTC had jurisdiction where the defendant merely offered an options trade in foreign currency but did not actually trade the option. See Commodity Futures Trading Commission v. White Pine Tr. Corp., 574 F.3d 1219, 1224-25 (9th Cir. 2009) (interpreting 7 U.S.C. § 2(c)(2)(B)(i)(II)).

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: September 23, 2022

David C. Keesler
United States Magistrate Judge