UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00487-RJC-DCK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMISSION, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | **Order** |
| STORM BRYANT, et al., ) ) | |
| Defendants. ) ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss, (Doc. No. 24), and the Magistrate Judge's Memorandum and Recommendations ("M&R"), (Doc. No. 53).

## I. BACKGROUND

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set forth in the M&R.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."

*Id.* Likewise, merely reiterating the same arguments made in the pleadings or motion submitted to the Magistrate Judge does not warrant de novo review. *See United States v. Midgette*, 478 F.3d 616, 620–21 (4th Cir. 2007); *Durkee v. C.H. Robinson Worldwide, Inc.*, 765 F. Supp. 2d 742, 747 (W.D.N.C. 2011), *aff'd sub nom.*, *Durkee v. Geologic Sols., Inc.*, 502 F. App'x 326 (4th Cir. 2013).

### III. DISCUSSION

The Commodity Futures Trading Commission ("CFTC") initiated this action on September 15, 2021, alleging that Defendants offered foreign currency trading agreements to nearly one hundred clients, collected over $1 million of investments from those clients, and spent that $1 million on jewelry, luxury vacations, and other personal expenditures. (Doc. No. 1). Defendants moved to dismiss the CFTC's claims, arguing that because the complaint accused Defendants of managing a Ponzi scheme without any actual trades in foreign currency (or plans to trade foreign currency), the CFTC failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 24). Relying on the language of the CFTC's jurisdictional statute, the Magistrate Judge issued an M&R denying Defendants' motion to dismiss. (Doc. No. 53).

Defendants lodge five objections to the M&R, each related to one central issue: whether Title 7 U.S.C. § 2(c)(2)(C) (2018) confers jurisdiction on the CFTC when parties offer to trade foreign currency on behalf of certain clients, regardless of whether their offer was genuine or was part of some larger fraud. Because the CFTC enjoys jurisdiction over offers – even fraudulent ones – to trade in foreign currency under 7 U.S.C. § 2(c)(2)(C), Defendants' objections are flawed and the motion to dismiss is denied.

The Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, extends the CTFC's jurisdiction to "any agreement … in foreign currency that is offered to … a person that is not an eligible contract participant." § 2(c)(2)(C)(i)(I)(aa). Likewise, 7 U.S.C. §§ 2(c)(2)(C)(i)(I)(bb) and 2(c)(2)(C)(vii)

2

grant the CFTC jurisdiction over agreements in foreign currency "offered … on a leveraged or margined basis" and "investment vehicles offered for the purpose of trading … in foreign currency." The CFTC asserts jurisdiction under each of these statutory provisions. (Doc. No. 26).

Though Defendants accept that offers of agreements in foreign currency fall under CTFC jurisdiction, (Doc. No. 54, at 2), they contend that such offers must be "actual" or "real"– that is, the offering party must intend to follow through on his offer, instead of harboring some secret intent.[1] Thus, Defendants argue, because the CFTC alleges that Defendants never intended to trade in foreign currency, and, indeed, that Defendants were not even involved in the foreign exchange market, their offers to trade foreign currency were not "real" or "actual" offers, and the CFTC lacks jurisdiction. Within this interpretation of 7 U.S.C. § 2(c)(2)(C), Defendants draw a line between their "purported" offers – that is, completely fraudulent ones – and "real" offers.

Such wordplay is misplaced; for purposes of CFTC jurisdiction, no difference exists between fraudulent offers and well-intended ones. *See U.S. Commodity Futures Trading Comm'n v. Cook*, No. 09-3332 (MJD/FLN), 2016 WL 128131, at *1, *3-4 (D. Minn. Jan. 12, 2016) (recognizing CFTC jurisdiction under 7 U.S.C. § 2(c)(2)(C) where the defendant gathered funds from clients with the "purported purpose of trading forex contracts" but "failed to disclose that their funds would not be used for forex trading"); *Commodity Futures Trading Comm'n v. White Pine Tr. Corp.*, 574 F.3d 1219, 1224 (9th Cir. 2009) (recognizing CFTC jurisdiction under 7 U.S.C. § 2(c)(2)(B) where defendants promised to invest clients' money but then stole the money, because "[o]ne can offer something without actually possessing or having any intention to convey to the offeree the thing offered"); *id*. (rejecting the "counterintuitive result" that would occur if the

---

[1] Defendants note discrepancies in the M&R as to their argument and clarify in their objections that a "real" or "actual" offer can create CFTC jurisdiction without a corresponding foreign exchange transaction. (Doc. No. 54). The Court addresses Defendants' clarified argument.

3

CFTC were denied jurisdiction under 7 U.S.C. § 2(c)(2)(B) "simply because the funds obtained were stolen rather than invested as promised"); *Commodity Futures Trading Comm'n v. Foreign Fund*, 549 F. Supp. 2d 1005, 1006 (M.D. Tenn. 2008) (recognizing CFTC jurisdiction under 7 U.S.C. § 2(c)(2)(B) where defendants solicited funds from customers, "purportedly to be used for trading foreign currency," but never used the funds in a way that "might indicate the existence of trading activity."); *see also Commodity Futures Trading Comm'n v. Doe 1*, No. 4:18-CV-00807-O, 2019 WL 3926809, at *4, *13 (N.D. Tex. June 28, 2019) (granting default judgment to the CFTC under 7 U.S.C. § 2(c)(2)(C) where the defendant offered foreign currency agreements but "never engaged in any profitable forex trading …, and rather than using [his client's] funds to trade forex, … misappropriated the funds."); *U.S. Commodity Futures Trading Comm'n v. Simmons*, No. 311CV00023RJCDCK, 2017 WL 4159970, at *5, *9 (W.D.N.C. Sept. 19, 2017) (granting default judgment to the CFTC under 7 U.S.C. § 2(c)(2)(D) where a defendant offered foreign currency agreements but "never engaged in any trading of forex on behalf of [his] customers," and instead misappropriated those funds). In each of the above cases, defendants offered fraudulent agreements in foreign currency, and the courts recognized CFTC jurisdiction over those fraudulent offers.

Under this precedent and a plain reading of the Commodity Exchange Act, the Court declines Defendants' invitation to add the words "actual" or "real" to Congress's jurisdictional bounds on the CFTC; once a party offers an agreement in foreign currency covered under the Commodity Exchange Act, the CFTC holds jurisdiction. *See United States v. Sonmez*, 777 F.3d 684, 688 (4th Cir. 2015) ("[W]e are required to interpret statutory language as written and are not permitted to add words of our own choosing."). Therefore, whether or not Defendants secretly intended to misappropriate their clients' money, the CFTC properly alleges that Defendants

offered agreements in foreign currency to certain clients, and those offers create CFTC jurisdiction under 7 U.S.C. §§ 2(c)(2)(C)(i)(I)(aa), 2(c)(2)(C)(i)(I)(bb), and 2(c)(2)(C)(vii).

With respect to 7 U.S.C. § 2(c)(2)(C)(vii), Defendants insist their subjective intent in offering agreements in foreign currency controls CFTC jurisdiction. (Doc. No. 54). Defendants are again mistaken. Under § 2(c)(2)(C)(vii), the CFTC retains jurisdiction over "an account or pooled investment vehicle that is offered for the purpose of trading, or that trades, any agreement, contract, or transaction in foreign currency described in clause (i)." Because the CFTC alleges that Defendants' purpose in offering agreements was fraud, and not investment, Defendants hope to evade CFTC jurisdiction. A plain reading of the statute, however, grants jurisdiction to the CFTC: pooled investment vehicles are offered "for the purpose of trading" when they are offered to clients with the express purpose of trading foreign currency. *Cf. Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F. Supp. 2d 840, 852 (E.D. Va. 2003), *aff'd*, 176 F. App'x 109 (Fed. Cir. 2006) (noting that when parties offer contract terms, "[i]t is the outward expression of intent that controls, rather than a secret, unexpressed intention."). While Defendants may have *used* clients' money for their financial misdeeds, the CFTC alleges that the investment vehicles were *offered* to clients for the express purpose of trading in foreign currency, as contemplated by 7 U.S.C. § 2(c)(2)(C)(vii). That allegation is sufficient.

Defendants' proposed interpretations of the Commodity Exchange Act, while creative, bend Congressional intent beyond recognition. *See* H.R. Rep. No. 93–975, at 51 (1974) (discussing creation of the CFTC to "protect the public against fraud, cheating, [and] mishandling of funds."); S. Rep. No. 94–1488, at 3 (1976) (discussing amendments to the Commodity Exchange Act to prevent defendants from "escap[ing] the applicability" of antifraud provisions); *Commodity Futures Trading Comm'n. v. Baragosh*, 278 F.3d 319, 323 (4th Cir. 2002) (noting the Commodity

5

Exchange Act's "anti-fraud measures designed to protect both small investors and the market as a whole."). Against this background, a plain reading of the Commodity Exchange Act delivers one unambiguous meaning: CFTC jurisdiction arises when parties offer to trade foreign currency on behalf of certain clients, regardless of whether their offer was genuine. Because the CFTC properly alleges that Defendants made such offers, the motion to dismiss is denied.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 53), is **ADOPTED**; and
2. Defendants' Motion to Dismiss, (Doc. No. 24), is **DENIED**

Signed: January 25, 2023

Robert J. Conrad, Jr.
United States District Judge