# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### 3:21-cv-00487-RJC-DCK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>STORM BRYANT, ELIJAH BRYANT, III, )<br>CAPITALSTORM LLC, )<br>GENERATIONBLACK LLC, AND )<br>NCOME, LLC, )<br><br>Defendants. )<br><br>_____ ) | <u>ORDER</u> |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 78), and Plaintiff's Motion for Entry of Default against Corporate Defendants, (Doc. No. 86). The Motion for Summary Judgment comes before the Court unopposed and is ripe for adjudication. As explained below, Plaintiff's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Entry of Default is **DENIED AS MOOT**.

## I.    BACKGROUND

Plaintiff Commodity Futures Trading Commission ("CFTC") filed this lawsuit on September 15, 2021, seeking injunctive and other equitable relief as well as civil monetary penalties under the Commodity Exchange Act (the "Act") against Defendants Storm Bryant and Elijah Bryant, III (the "Bryants"), and Corporate Defendants CapitalStorm LLC, GenerationBlack LLC, and Ncome LLC. (Doc. No. 1

1

at 1, 30–33). In addition to each Defendant's own liability, the Complaint alleges that the Bryants and the Corporate Defendants are liable for each other's acts pursuant to 7 U.S.C. §§ 2(a)(1)(B) and 13c(b) and Commission Regulation ("Regulation") 1.2, 17 C.F.R. §1.2, as principals for their agents', the Bryants', violations of the Act. (Doc. No. 1 ¶¶ 11–12). Plaintiff's statement of the facts remains undisputed.

From March 2, 2018, through September 15, 2021, the Bryants, individually and through the Corporate Defendants, solicited clients and prospective clients, who were not eligible contract participants ("ECPs") to engage in retail transactions in off-exchange foreign currency ("forex") on a leveraged, margined, or financed basis. (Doc. No. 78-2 ¶ 1 (citing Doc. No. 78-3 ¶¶ 9, 10, 18, 25)). The Bryants controlled the Corporate Defendants in their capacities as officers, agents, and principals of CapitalStorm, GenerationBlack, and Ncome. (Doc. No. 78-2 ¶ 18; Doc. No. 78-3 ¶¶ 8, 13–17, 34–43). Corporate Defendants, without registration as commodity trading advisors ("CTAs"), solicited clients through in-person meetings and the use of social media and the internet. (Doc. No. 78-2 ¶ 4; Doc. No. 78-3 ¶¶ 9, 12–16, 20, 25, 32). The Bryants, in their personal capacity, engaged in the same conduct without registration as associated persons ("APs") of a CTA. *Id.*

Defendants set up the business as a Ponzi scheme, using money deposited by clients to pay out the same or other clients. (Doc. No. 78-2 ¶ 3; Doc. No. 78-3 ¶¶ 11, 20). Throughout the relevant time, Defendants misappropriated $1,993,414.58 from 233 clients by receiving and/or moving funds into accounts held in the Bryants' own names and using the money to support their lavish lifestyle. (Doc. No. 78-2 ¶¶ 2, 14;

Doc. No. 78-3 ¶¶ 9–11, 17–20). Most clients did not receive any return of funds, despite their repeated demands. (Doc. No. 78-2 ¶ 16; Doc. No. 78-3 ¶¶ 21, 23).

Defendants made many material misrepresentations and omissions to induce clients into depositing money, including statements regarding how clients' funds would be used to open trading accounts; Defendants' success, performance, and generous returns; and Defendants' ability to lawfully trade for anyone. (Doc. No. 78-2 ¶ 7; Doc. No. 78-3 ¶¶ 13–16, 20–23, 27). Further, Defendants failed to disclose that they never opened accounts in clients' names; they did not conduct trading for clients; the trading accounts clients viewed were demos; and neither Corporate Defendants nor the Bryants were registered with the CFTC. (Doc. No. 78-2 ¶ 9; Doc. No. 78-3 ¶¶ 8–11, 16, 18, 20).

On December 4, 2023, Plaintiff filed the instant Motion for Summary Judgment and requested that this Court enter a permanent injunction imposing trading and registration bans and enjoining Defendants from future violations of the Act and Regulations. (Doc. No. 78-1 at 23). Plaintiff further requested that this Court order Defendants to pay restitution, jointly and severally, in the amount of $1,329,619.85, plus post-judgment interest, and order Defendants to pay a civil monetary penalty, jointly and severally, in the amount of $3,988,859.55, plus post-judgment interest. (*Id.* at 23–24). On January 19, 2024, this Court issued a Roseboro Order, ordering the individual Defendants to respond to the pending motion within fourteen days of the order and ordering the Corporate Defendants to retain counsel. (Doc. No. 81). Defendants failed to respond or retain counsel. On June 6, 2024,

Plaintiff moved for entry of default against Corporate Defendants for failure to retain counsel. (Doc. No. 86).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.* The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. A failure to respond to a motion for summary judgment does not automatically establish for the moving party the burden imposed upon it by Rule 56. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir.1993). In an uncontested motion for summary judgment, the moving party's asserted facts are uncontroverted,

4

and thus there is no genuine issue of material fact. However, the moving party must also establish "that it is 'entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). Thus, the court, "in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Id.*

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted).

## III. DISCUSSION

Plaintiff claims that Defendants violated six provisions of the Commodity Exchange Act (the "Act"), codified in Title 7 of the U.S. Code, and seven provisions of the Commission Regulations (the "Regulations"), codified in Title 17 of the Code of Federal Regulations. These provisions regulate largely the same behaviors, and as such, the same facts support violations of multiple provisions. The Court will address each in turn.

### A. Count I: Cheating or Defrauding in Violation of 7 U.S.C. § 6b(a)(2)(A)–(C) and 17 C.F.R. § 5.2(b)(1), (3)

Under Section 4b(a)(2)(A)–(C), it is unlawful for any person contracting in the sale or swap of commodities:

> to cheat or defraud or attempt to cheat or defraud the other person; willfully to make or cause to be made to the other person any false report or statement . . . ; [or] willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of

5

any order or contract, or in regard to any act of agency performed, with respect to an order or contract for or . . . with the other person.

7 U.S.C. § 6b(a)(2)(A)–(C). Subject to Section 4b of the Act are contracts, transactions, accounts, and pooled investment vehicles, as well as any non-commodity agreements, contracts, and transactions offered "as if" they were contracts for commodities. *Id.* § 2(c)(2)(C)(ii)(I), (iv). Plaintiff maintains jurisdiction over accounts or pooled investment vehicles offered for the purpose of trading in foreign currency. *Id.* § 2(c)(2)(C)(vii).

Similarly, 17 C.F.R. § 5.2(b) regulates prohibited transactions:

It shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction[,] [t]o cheat or defraud or attempt to cheat or defraud any person . . . or [w]illfully to deceive or attempt to deceive any person by any means whatsoever.

17 C.F.R. § 5.2(b)(1), (3).

### 1. *Fraud by Misrepresentation or Omission of Material Facts*

To establish Defendants' violation of Section 4b of the Act through misrepresentations or omission of material facts, Plaintiff must prove: "(1) a misrepresentation, misleading statement, or deceptive omission was made; (2) with scienter; and (3) that the misrepresentation, misleading statement, or deceptive omission was material." *U.S. Commodity Futures Trading Comm'n v. PMC Strategy, LLC*, 903 F. Supp. 2d 368, 378 (W.D.N.C. 2012) (citations omitted).

### i. *Misrepresentations or Omissions*

The undisputed facts show Defendants made misrepresentations and/or omissions of material facts with the objective of fraudulently soliciting funds from

6

non-ECP retail clients.[1] The Bryants falsely claimed to trade forex on behalf of clients; falsely claimed to generate profits trading forex on behalf of clients; falsely represented their experience and history as profitable in forex trading; and falsely asserted the ability to legally trade for anyone. (Doc. No. 1 ¶ 35; Doc. No. 78-2 ¶¶ 7–8; Doc. No. 78-3 ¶¶ 14–23, 27; Doc. No. 58 ¶ 44; Doc. No. 59 ¶ 44). Further, Corporate Defendants never registered with the CFTC as legally required, and the trading account transactions Defendants used to update clients on their "success" were demo accounts showing trades that never occurred. (Doc. No. 78-2 ¶ 47; Doc. No. 78-3 ¶¶ 8, 20, 32).

Accordingly, the Court finds the undisputed facts show Defendants made misrepresentations, misleading statements, and/or deceptive omissions.

### ii. Scienter

"The scienter element is established when an individual's 'conduct involves intentional omissions or misrepresentations that present a risk of misleading customers, either known to the defendant or sufficiently manifest that the defendant must have been aware of the risk.'" *PMC Strategy, LLC*, 903 F. Supp. 2d at 378 (citations omitted). Although accidental conduct does not establish scienter, a showing of recklessness suffices. *Id.*; *CFTC v. Millenium Trading Grp., Inc.*,

---

[1] For an individual to qualify as an ECP, the individual must be "acting for its own account" and have "amounts invested on a discretionary basis, the aggregate of which is in excess of $10,000,000; or $5,000,000, and [have] enter[ed] into the agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." 7 U.S.C. § 1a(18)(A)(xi).

7

No. 07-CV-11626, 2007 WL 2639474, at *7 (E.D. Mich. Sept. 6, 2007) (citation omitted) (noting that a defendant acts with scienter "by making representations that have no reasonable basis, or that mark 'an extreme departure from the standards of ordinary care'").

In *CFTC v. PMC Strategy, LLC*, the district court found defendants acted with scienter when they represented to their clients both orally and in written statements the purported profitable returns of forex trading while knowing "they were not successfully trading forex" but instead "using pool participant funds to pay purported profits and return principal to other pool participants." 903 F. Supp 2d at 378–79. Similarly, the undisputed facts here show that Defendants either knew that their misrepresentations and omissions were false, or that they made such statements and omissions with reckless disregard for the truth. The Bryants spent client funds on personal expenses, did not open trading accounts in clients' names, never registered with the CFTC, and knew their personal trading history was at a loss of 54%.

Accordingly, the Court finds the undisputed facts show that the Defendants acted with scienter.

### iii.    *Material Character of Misrepresentations and Omissions*

"A statement is material if 'there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest.'" *Id.* at 379 (quoting *R & W Technical Serv. Ltd. v. CFTC*, 205 F.3d 165, 169 (5th Cir. 2000)) (citations omitted). "Any fact that enables customers to assess independently

8

the risk inherent in their investment and the likelihood of profit is a material fact."

*Id.* (citation omitted).

> In *PMC Strategy, LLC*, the district court found materiality where
>
> a reasonable pool participant would want to know . . . that the Defendants were not experienced traders, that their personal forex trading was unsuccessful, that PMC consistently put more than two percent of pool participant funds at risk, and that any purported profits on investment were being paid using other PMC pool participants' money as part of a Ponzi scheme.

*Id.*

During the relevant time, Defendants never profited as traders, maintained no client accounts, and any purported profits that Defendants paid out to clients were solely the initial deposits by the same or other clients in the form of a Ponzi scheme. (Doc. No. 78-2 ¶¶ 9(g), 51; Doc. No. 78-3 ¶¶ at 9–11, 17–20, 27, 33–34). A reasonable investor would consider these misrepresentations in deciding whether to invest his or her money in the Defendants' businesses.

Accordingly, the Court finds that based on the undisputed facts, Plaintiff is entitled to judgment as a matter of law as to its claim that Defendants committed fraud by misrepresentation in violation of Section 4b.

### 2. *Fraud by Misappropriation*

The Court finds that Defendants misappropriated client funds in violation of 17 C.F.R. § 5.2(b)(1), (3) and Section 4b, 7 U.S.C. § 6b(a)(2). "Misappropriation of pool participant funds constitutes 'willful and blatant' fraud in violation of Sections 4b(a)(2)(A) and (C) of the Act." *PMC Strategy, LLC*, 903 F. Supp. 2d at 377 (first citing *CFTC v. Noble Wealth Data Info. Servs., Inc.,* 90 F. Supp. 2d 676, 687 (D.Md.2000),

*aff'd in relevant part sub nom., CFTC v. Baragosh,* 278 F.3d 319 (4th Cir.2002), *cert. denied,* 537 U.S. 950, 123 S. Ct. 415, 154 L.Ed.2d 296 (2002), then citing supporting cases).

Here, Defendants fraudulently instructed clients to wire funds to bank accounts held in the Bryants' personal names through the use of interstate wires for transfer of funds, websites, and social media. (Doc. No. 78-2 at ¶ 10; Doc. No. 78-3 ¶¶ 14–16). Defendants received $1,993,414.58 from clients, using none of it to trade forex for those clients. (Doc. No. 78-2 ¶ 11; Doc. No. 78-3 ¶¶ at 9–11, 17–20, 34(b)). The portion that Defendants returned to some clients came from withdrawals of principal, not trading profits as claimed. (Doc. No. 78-2 ¶ 14; Doc. No. 78-3 ¶¶ 11, 17–20).

Accordingly, this Court finds as a matter of law that Plaintiff is entitled to summary judgment as to its claim that Defendants misappropriated funds in violation of 17 C.F.R. § 5.2(b)(1), (3) and Section 4b(a)(2).

## B. Count II: Failing to Register as CTAs in Violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(bb), 6m(1), and 17 C.F.R. § 5.3(a)(3)(i)

Section 2(c)(2)(C)(iii)(I)(bb) prohibits any person not registered with the CFTC from acting as a retail forex CTA for non-ECPs, with exceptions not applicable to the present case. 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb). The Regulations define a retail forex CTA as "any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an eligible contract participant . . . in connection with retail forex transactions." 17 C.F.R. § 5.1(e)(1). A retail forex CTA must register with the CFTC. *Id.* § 5.3(a)(3)(i); s*ee CFTC v. EJS Capital Mgmt., LLC,* No. 14 CV 3107,

2015 WL 13359358, at *7 (S.D.N.Y. Dec. 18, 2015) (finding an unregistered defendant exercising discretionary trading authority over non-ECP customer accounts in connection with retail forex transactions "was required to register as a CTA . . . and failed to do so, in violation of Regulation 5.3(a)(3)"). The Act prohibits any unregistered CTA from "mak[ing] use of the mails or any means or instrumentality of interstate commerce in connection with his business as such [CTA]." 7 U.S.C. § 6m(1).

The undisputed facts demonstrate that the Corporate Defendants, without registering with the CFTC, operated as retail forex CTAs by exercising discretionary trading authority over accounts for non-ECPs in connection with retail forex transactions. (Doc. No. 78-2 ¶¶ 22, 28, 65–66; Doc. No. 78-3 ¶¶ 9–10, 14, 25). Either Defendants failed to maintain records regarding whether any clients were ECPs or nearly all of Defendants' clients were non-ECPs. (Doc. No. 78-2 ¶¶ 28, 39; Doc. No. 78-3 ¶¶ 9, 25)). Further, Defendants unlawfully used instrumentalities of interstate commerce—social media, a website, and other internet sources—to conduct their business as CTAs. (Doc. No. 78-2 ¶¶ 4, 27, 36–46, 69–70; Doc. No. 78-3 ¶¶ 9, 12–16, 25).

Accordingly, Plaintiff is entitled to summary judgment on its claim that Corporate Defendants violated 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb), 17 C.F.R. § 5.3(a)(3)(i), and 7 U.S.C. § 6m(1).

11

## C. Count III: Failing to Register as Associated Persons of a CTA in Violation of 7 U.S.C. §§ 6k(3) and 2(c)(2)(C)(iii)(I)(aa), and 17 C.F.R. § 5.3(a)(3)(ii)

7 U.S.C. § 6k(3) makes it "unlawful for any person to be associated with a [CTA] as a partner, officer, or employee, consultant, or agent . . . in any capacity which involves . . . the solicitation of a client's or prospective client's discretionary account . . . unless such person is registered with the Commission" as an AP[2] of a CTA. Analogously, 17 C.F.R. § 5.3(a)(3)(ii) requires any person acting as an AP of a retail forex CTA to register as such with the CFTC. *Commodity Futures Trading Comm'n v. Mayer*, No. 1:20-CV-02476, 2021 WL 9385440, at *8 (N.D. Ga. July 27, 2021). Section 2(c)(2)(C)(iii)(I)(aa) prohibits any unregistered person from soliciting or accepting orders from any non-ECP in connection with off-exchange forex transactions, with some exceptions not applicable to the present case. 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa); *Mayer*, 2021 WL 9385440, at *8.

The following undisputed facts support finding Plaintiff is entitled to summary judgment: the Bryants solicited and accepted orders in connection with off-exchange forex transactions, (Doc. No. 78-2 ¶¶ 21, 24–25, 58, 68–69; Doc. No. 78-3 ¶¶ 8–14, 16, 18, 20); nearly all their clients were non-ECPs; and the Bryants associated with Corporate Defendants (acting as CTAs) in capacities involving soliciting clients' discretionary accounts without registering with the CFTC. (Doc. No. 78-2 ¶¶ 21, 23–

---

[2] An AP of a retail forex CTA includes "any natural person associated with a [CTA] . . . as a partner, officer, employee, consultant or agent . . . in any capacity which involves the solicitation of a client's or prospective client's discretionary account; or the supervision of any person or persons so engaged." 17 C.F.R. § 5.1(e)(2).

25, 58, 67–68; Doc. No. 78-3 ¶¶ 8, 13–14, 32). Accordingly, Plaintiff is entitled to summary judgment as to Count III.

### D. Count IV: Committing Fraud as a CTA in Violation of 7 U.S.C. § 6o(1)(A)–(B)

Section 4o(1)(A)–(B) prohibits CTAs or APs of CTAs from using:

> mails or any means or instrumentality of interstate commerce to employ any device, directly or indirectly, to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

7 U.S.C. § 6o(1)(A)–(B). Section 4o applies broadly to all CTAs, registered or unregistered. *CFTC v. Weinberg,* 287 F. Supp. 2d 1100 (C.D. Cal. 2003) (citing *CFTC ex rel. Kelley v. Skorupskas*, 605 F. Supp. 923, 932–33 (E.D. Mich. 1985)) (Section 4o "applies to all [commodity pool operators,] whether registered, required to be registered, or exempted from registration"); *CFTC v. Tate St. Trading, Inc.*, No. 3:19-cv-00690, 2021 U.S. Dist. LEXIS 215358, at *23 (E.D. Va. June 1, 2021) (same); 7 U.S.C. § 1a(12)(a); (definition of CTA); 17 C.F.R. § 5.1(e)(1) (same). Section 4o applies to forex CTAs pursuant to Section 2(c)(2)(C)(ii), (iv) of the Act. 7 U.S.C. § 2(c)(2)(C)(ii), (iv).

The same conduct which violates Section 4b, 7 U.S.C. § 6b(a), also violates Section 4o, 7 U.S.C. § 6o(1). *See CFTC v. Aurifex Commodities Research Co.*, No. 1:06-CV-166, 2008 WL 299002, at *8 (W.D. Mich. Feb. 1, 2008) (finding defendants violated section 4b(a) of the Act, codified at 7 U.S.C. § 6b(a), and therefore also violated section 4o(1) of the Act, codified at 7 U.S.C. § 6o(1)); *Skorupskas*, 605 F. Supp. at 932–33; *Tate St. Trading, Inc.*, 2021 U.S. Dist. LEXIS 215358, at *23.

13

Accordingly, for the reasons previously discussed regarding Count I, the Court finds Defendants violated Section 4o(1)(A)–(B), and Plaintiff is entitled to summary judgment as to Count IV.

### E. Count V: Mishandling Client Funds in Violation of 17 C.F.R §§ 4.30(a) and 5.4

17 C.F.R. § 4.30(a) provides that "no commodity trading advisor may solicit, accept or receive from an existing or prospective client funds, securities or other property in the trading advisor's name . . . to purchase, margin, guarantee or secure any commodity interest of the client." Under Regulation 5.4, any violation of Regulation 4.30(a) shall likewise constitute a violation of Regulation 5.4. 17 C.F.R. § 5.4 (Section 4 "applies to any person required pursuant to the provisions of this part 5 to register as . . . a [CTA]. Failure by any such person to comply with the requirements of part 4 will constitute a violation of this section and the relevant section of part 4.").

The undisputed facts show that Defendants received $1,993,414.58 from 233 clients, which the Bryants, individually and as agents of the Corporate Defendants, accepted and held in personal bank accounts in the Bryants' names for the purported purpose of trading retail forex accounts on behalf of the non-ECP clients. (Doc. No. 78-2 ¶¶ 1–2, 10–13, 28, 577, 62, 69–70); *see CFTC v. Ramirez*, No. 4:19-cv-140, 2019 U.S. Dist. LEXIS 152563, *34–35 (S.D. Tex. July 12, 2019) ("Defendant violated 17 C.F.R. § 4.30(a) by receiving private account client funds in his own name."); *CFTC v. Alper*, No. 7:19-cv-09832, 2020 U.S. Dist. LEXIS 134079, at *16–17 (S.D.N.Y. June 2, 2020) (same). Accordingly, Plaintiff is entitled to summary judgment as to Count V.

**F. Count VI: Failing to Keep and Maintain Required Books and Records in Violation of 17 C.F.R §§ 4.33 and 5.4**

Regulation 4.33 requires a CTA keep certain books and records related to its business "in an accurate, current and orderly manner." Such required records include clients' names and addresses; "all powers of attorney . . . authorizing the [CTA] to direct the commodity interest account of a client or subscriber;" records of all client accounts and transactions; and itemized daily records of transactions. 17 C.F.R. § 4.33. As previously discussed, any violation of Regulation 4 shall likewise constitute a violation of Regulation 5.4. 17 C.F.R. § 5.4.

Here, the undisputed facts show that Defendants failed to maintain required books and records concerning their activities as CTAs. In response to the CFTC's issuance of administrative subpoenas, Defendants provided some records, but failed to produce, among other things: the names and addresses of each client; any valid powers of attorney authorizing them to trade clients' forex accounts; daily transaction records relating to any account for which they held a valid power of attorney authorizing them to trade on behalf of clients; or any acknowledgement of receipt of disclosure documents required by Regulation 4.33(b) related to any account they traded on behalf of a client. (Doc. No. 78-2 ¶ 71 (citing Doc. No. 78-3 ¶¶ 7(d), (g), 24, 33; Doc. Nos. 58–62 ¶ 71)). Defendants also failed to keep records of whether prospective clients were ECPs or information regarding prospective clients' savings and investments. (Doc. No. 78-2 ¶ 73 (citing Doc. No. 78-3 ¶¶ 7(d), (g), 9, 24–25, 33)). Accordingly, Plaintiff is entitled to summary judgment as to Count VI.

15

### G. The Bryants' Liability Under 7 U.S.C. § 13c(b)

As controlling persons, the Bryants are liable for Corporate Defendants' violations of the Act pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b). "A fundamental purpose of section 13(b) is to allow the [CFTC] to reach behind the corporate entity to the controlling individuals of the corporation and to impose liability for violations of the Act directly on such individuals as well as on the corporation itself." *PMC Strategy, LLC*, 903 F. Supp. 2d at 379 (citation omitted). "[C]ontrolling person liability reaches those who actually direct a corporation or cause it to act, but would otherwise hide behind formalities of ownership or title." *Baragosh*, 278 F.3d at 330–331 (citation omitted).

Under Section 13(b), to establish an individual's liability for a corporation's conduct, the CFTC "must show that the [individual] defendant 'actually exercised general control over the operation of the entity principally liable' *and* 'possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, even if such power was not exercised.'" *Id.* at 330 (citations omitted) (emphasis in original). Pursuant to Section 13(b) of the Act, a controlling person is defined as "[a]ny person who, directly or indirectly, controls any person who has violated any provision of this Act . . . or any of the rules, regulations, or orders issued pursuant to this Act" if that "controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation." 7 U.S.C. § 13c(b). To establish "knowing inducement," the CFTC "must show that the 'controlling person had actual or constructive knowledge of the core activities that constitute the violation at issue and allowed them to continue.'" *PMC Strategy, LLC*,

16

903 F. Supp. 2d at 379 (citation omitted). "Because control may be exercised jointly by a group, several persons may simultaneously be controlling persons of the same corporation." *Baragosh*, 278 F.3d at 330 (citation omitted).

At all relevant times, the Bryants were the managing members of the Corporate Defendants, and as such, the Bryants controlled and directed the entirety of the Corporate Defendants' acts. The Bryants did not act in good faith and knowingly induced the acts that constituted Corporate Defendants' violations of the Act and Regulations. Accordingly, the Bryants are liable for Corporate Defendants' violations of the Act and Regulations.

## H. The Corporate Defendants' Liability Under 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2

Under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2, a principal is strictly liable for the violations of its officials, agents, or other persons acting for it within the scope of their employment or office. *See Rosenthal & Co. v. Commodity Futures Trading Com.*, 802 F.2d 963, 966 (7th Cir. 1986) ("[S]ection 2(a)(1) imposes strict liability on the principal . . . provided . . . that the agent's misconduct was within the scope or . . . in furtherance of the agency.").

The Bryants committed the acts and omissions described herein within the course and scope of their employment, agency, and/or office at CapitalStorm, GenerationBlack, and Ncome. Accordingly, under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2, Corporate Defendants are liable as principals for the Bryants' violations of the Act and Regulations.

17

## I. Remedies

The Act enables a court to impose injunctive relief, civil monetary penalties, and other equitable relief on a person or entity found in violation of the Act. 7 U.S.C. § 13a-1(a)–(d).

### 1. Permanent Injunction

Here, the CFTC seeks a permanent injunction imposing trading and registration bans as well as barring all Defendants from future violations of the Act and Regulations. (Doc. No. 78-1 at 21–23). A permanent injunction is proper upon a showing that a defendant has violated the Act, and "there is some reasonable likelihood of future violations" based on the totality of the circumstances. *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979). Here, the violations did not occur in isolation but were part of a lengthy criminal enterprise with damaging impact on the victims. Therefore, the Court finds each Defendant presents a substantial risk of future violations which should be curbed by injunctive relief.

### 2. Restitution

The CFTC also seeks restitution in the form of ordering Defendants to pay, jointly and severally, $1,329,619.85, plus post-judgment interest, with any funds recovered to be distributed pro rata to those clients who received either no payments from Defendants or received payments less than what they sent to Defendants. (Doc. No. 78-1 at 23–24). The Court has discretion to order restitution. 7 U.S.C. § 13a-1(d)(3)(A). "The object of restitution is to restore the status quo and return the parties to the positions they occupied before the transactions at issue occurred." *PMC Strategy, LLC*, 903 F. Supp. 2d at 382 (citations omitted). The Court measures

18

restitution "by the amount invested by customers less any refunds made by the [D]efendants." *Id.* (alteration in original) (citations omitted).

Defendants fraudulently solicited $1,993,414.58 from 233 clients. (Doc. No. 78-2 ¶¶ 2, 57; Doc. No. 78-3 ¶¶ 9–11, 17–19). While carrying out their Ponzi scheme, Defendants paid out $663,794.73 to certain clients. (Doc. No. 78-3 ¶ 11). Defendants unlawfully retained $1,329,619.85 from their clients. Accordingly, the Court orders Defendants to pay restitution in the amount of $1,329,619.85, jointly and severally, plus post-judgment interest.

### 3. Civil Monetary Penalty

Section 6c(d)(1) of the Act provides "the Commission may seek, and the Court shall have jurisdiction to impose . . . on any person found in the action to have committed any violation . . . a civil penalty in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation." 7 U.S.C. § 13a-1(d)(1). The Commission Regulations adjust the statutory civil monetary penalty of $100,000 for inflation. 17 C.F.R. § 143.8.

The Court is free to fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent. *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999). "In determining how extensive the fine for violations of the Act ought to be, courts and the Commission have focused upon the nature of the violations." *Noble Wealth*, 90 F. Supp. 2d at 694, *aff'd in part, vacated in part sub nom. Baragosh*, 278 F.3d 319. Conduct that violates the core provisions of the Act, such as customer fraud, "should be considered very serious even if there are mitigating facts and circumstances." *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir.

19

1995) (citation omitted) (emphasis omitted). In the case at hand, there are no mitigating facts or circumstances presented. Instead, Defendants blatantly engaged in fraudulent conduct, pocketing $1,329,619.85 from 233 innocent victims.

In light of the conduct discussed above, the Court concludes that a serious and significant sanction is appropriate. Accordingly, Defendants shall pay, jointly and severally, a maximum civil monetary penalty of "triple the monetary gain to the person for each violation" pursuant to Section 6c(d)(1). 7 U.S.C. § 13a-1(d)(1); s*ee CFTC v. Hayes*, 2007 WL 858772 at *5 (E.D. Va. Mar. 13, 2007) (imposing penalty of triple the monetary gain); *CFTC v. Premium Income Corp.*, No. Civ.A. 3:05CV0416B, 2007 WL 429092 at *14 (N.D. Tex. Jan. 26, 2007) (imposing penalty of triple the monetary gain, "as measured by triple the amount of customer funds received by [defendants], less the funds returned to customers, plus pre-judgment interest"). Defendants profited $1,329,619.85 by virtue of their fraud. Three times that amount is $3,988,859.55, an appropriate penalty given the gravity of Defendants' offenses and sufficient to deter Defendants and others from engaging in this fraudulent conduct.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff Commodity Futures Trading Commission's Motion for Summary Judgment, (Doc. No. 78), is **GRANTED**; and

2. Plaintiff's Motion for Entry of Default, (Doc. No. 86), is **DENIED AS MOOT**.

## PERMANENT INJUNCTION

3. Defendants Storm Bryant, Elijah Bryant, III, CapitalStorm, GenerationBlack, and Ncome shall be permanently restrained, enjoined, and prohibited from directly or indirectly engaging in conduct that violates:

    a. Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa);

    b. Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb);

    c. Section 4b(a)(2)(A)–(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)–(C);

    d. Section 4k(3) of the Act, 7 U.S.C. § 6k(3);

    e. Section 4m(1) of the Act, 7 U.S.C. § 6m(1);

    f. Section 4o(1)(A)–(B) of the Act, 7 U.S.C. § 6o(1)(A)–(B);

    g. Regulation 4.30(a), 17 C.F.R. § 4.30(a);

    h. Regulation 4.33, 17 C.F.R. § 4.33;

    i. Regulation 5.2(b)(1), (3), 17 C.F.R. § 5.2(b)(1), (3);

    j. Regulation 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i);

    k. Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii); and/or

    l. Regulation 5.4, 17 C.F.R. § 5.4.

2. Defendants Storm Bryant, Elijah Bryant, III, CapitalStorm, GenerationBlack, and Ncome are also permanently restrained, enjoined, and prohibited from directly or indirectly:

    a. Trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § 1a(40));

    b. Entering into any transactions involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3) and/or virtual currency for

their own personal accounts or for any account in which they have a direct or indirect interest;

c. Having any commodity interests and/or virtual currency traded on their behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests and/or virtual currency;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests and/or virtual currency;

f. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9); and

g. Acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a)), agent, or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9).

4. The injunctive provisions of this Order shall be binding upon Defendants, upon any person who acts in the capacity of officer, agent, employee, attorney, successor and/or assign of Defendants, and upon any person who

22

receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Defendants.

RESTITUTION

5. Defendants Storm Bryant, Elijah Bryant, III, CapitalStorm, GenerationBlack, and Ncome shall pay, jointly and severally, restitution in the amount of one million three hundred twenty-nine thousand six hundred nineteen dollars and eighty-five cents ($1,329,619.85) ("Restitution Obligation"). Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961. Any funds received shall be distributed pro rata to those clients who received less than or none of what they sent to Defendants.

6. To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' clients, the Court appoints the National Futures Association ("NFA") as Monitor. The Monitor shall receive restitution payments from Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

23

7. Defendants shall make Restitution Obligation payments, and any post-judgment interest payments, under this Consent Order to the Monitor in the name "CFTC v. Bryant – Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendant and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

8. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' clients identified by the CFTC or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a de minimis nature such that the Monitor determines that the administrative cost of making a distribution to eligible clients is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall

forward to the CFTC following the instructions for civil monetary penalty payments set forth below.

9. Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' clients to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

10. The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' clients during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

11. The amounts payable to each customer shall not limit the ability of any client of proving that a greater amount is owed from Storm Bryant, Elijah Bryant, III, CapitalStorm, GenerationBlack, Ncome, or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that may exist under state or common law.

12. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each client of Storm Bryant, Elijah Bryant, III, CapitalStorm, GenerationBlack, and Ncome who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Defendants to ensure continued compliance with any provision of this Order and to hold Defendants in contempt for any violations of any provision of this Order.

13. To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

## CIVIL MONETARY PENALTY

14. Storm Bryant, Elijah Bryant, III, CapitalStorm, GenerationBlack, and Ncome shall pay, jointly and severally, a civil monetary penalty in the amount of three million nine hundred eighty-eight thousand eight hundred fifty-nine dollars and fifty-five cents ($3,988,859.55) ("CMP Obligation"). Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

15. Defendants shall pay their CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and delivered to the following address:

> MMAC/ESC/AMK326
>
> Commodity Futures Trading Commission Division of Enforcement
>
> 6500 S. MacArthur Blvd.
>
> HQ Room 181
>
> Oklahoma City, OK 73169
>
> Telephone: (405) 954-6569
>
> Fax: (405) 954-1620
>
> 9-AMC-AR-CFTC@faa.gov

16. If payment is to be made by electronic funds transfer, the paying Defendant(s) shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall comply fully with those instructions. The paying Defendant(s) shall accompany payment of the CMP Obligation with a cover letter that identifies the payor and the name and docket number of this proceeding. The paying Defendant(s) shall simultaneously transmit copies of the cover letter and the form of payment

27

to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581.

## MATTERS RELATED TO PAYMENTS OF RESTITUTION AND CIVIL MONETARY PENALTIES

17. Acceptance by the CFTC or the Monitor of any partial payment of Defendants' Restitution Obligation or CMP Obligation shall not be deemed a waiver of Defendants' obligation to make further payments pursuant to this Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

18. On October 28, 2021, the Court entered the Consent Order of Preliminary Injunction and Other Relief as to Defendants ("Consent Order"). (Doc. No. 25.) The Consent Order contains an asset freeze order prohibiting the transfer, removal, dissipation, and disposal of Defendants' assets. (*Id.* at 5–6). The Court hereby lifts the asset freeze for the limited purpose of transferring the assets up to the amount owed to satisfy this Order. (*Id.*).

## MISCELLANEOUS PROVISIONS

**IT IS FURTHER ORDERED** that,

19. All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested as follows:

Notice to Commission:

Paul G. Hayeck

Deputy Director

Commodity Futures Trading Commission

28

1155 21st Street, NW

Washington, DC 20581

20. Until such time as Storm Bryant, Elijah Bryant, III, CapitalStorm, GenerationBlack, and Ncome satisfy in full their Restitution Obligation and CMP Obligation as set forth in this Order, Defendants shall provide written notice to the CFTC by certified mail of any change to their telephone number and/or mailing address within ten calendar days of the change.

21. If any provision of this Order or if the application of any provision or circumstance is held invalid, the remainder of the Order and the application of its provision to any other person or circumstance shall not be affected by the holding.

22. The injunctive and equitable relief provisions of this Order shall be binding upon Storm Bryant, Elijah Bryant, III, CapitalStorm, GenerationBlack, and Ncome, upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, email, facsimile, or otherwise insofar as he or she is acting in active concert or participation with any of the Defendants.

23. This Court shall retain jurisdiction of this action to implement and carry out the terms of all orders and decrees that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with the Order. All notice required to be given by any provision in the Order shall be sent by

certified mail, return receipt to the CFTC's Deputy Director. In the event

that Defendants change telephone number(s) and/or address(es) at any

time, corporate agents shall provide written notice of the new number(s)

and/or address(es) to the CFTC within ten calendar days thereof.

The Clerk of Court is otherwise directed to close this case.

Signed: October 28, 2024

Robert J. Conrad, Jr.
United States District Judge